In re Lecinda Marie CALDER, Debtor.

Molly BARTHOLOW, Standing Chapter 13 Trustee, Plaintiff,

v.

Lecinda Marie CALDER, Cordes Finance Corporation, Allstate Insurance Company, Defendants.

Bankruptcy No. 390–38897 RCM–13.
Adv. No. 393–3575.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

March 11, 1994.

Charles L. Kennon, III, Ft. Worth, TX, for plaintiff Molly Bertholow, Standing Chapter Trustee.

Vicki K. McCarthy, Duncanville, TX, for debtor/defendant Lecinda Marie Calder.

Patrick D. Ulrich, Arlington, TX, for defendant Cordes Finance Corp.

T.J. Johnson, Dallas, TX, for defendant Allstate Ins. Co.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROBERT McGUIRE, Chief Judge.

On March 7, 1994, came on to be heard this declaratory judgment action. Following are the Court's Findings of Fact and Conclusions of Law.

### Findings of Fact

1. Molly Bartholow, Standing Chapter 13 Trustee ("Trustee") is in a quandary as to the disbursement of automobile insurance proceeds paid by Allstate Insurance Company ("Allstate") to "Lecinda M. Calder ["Debtor"] and Molly Bartholow, Bankruptcy Trustee", arising from a post-petition and post-confirmation casualty loss involving property (vehicle) encumbered by a purchase money lien in favor of Cordes Finance Corporation ("Cordes"). This declaratory judgment action was filed pursuant to 28 U.S.C. §§ 2201 and 2202 because there is an actual controversy relating to the legal rights and duties of and between the parties to this action.

2. The Trustee alleges she may be obligated to pay over to Cordes all the insurance proceeds under the Fifth Circuit decisions of *In re Simmons*, 765 F.2d 547 (5th Cir.1985); *Matter of Howard*, 972 F.2d 639 (5th Cir. 1992); and the United States Supreme Court decisions *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) and *Nobelman v. American Savings Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). This payment would be under the theory that the car lien "survives (or passes through) the bankruptcy" and the lender is entitled to all proceeds or profits from the

collateral under the terms of the loan to include the "cash collateral" of insurance proceeds. Since the Debtor did not object to Cordes' secured claim, the car creditor asserts that it properly took and perfected a lien in the car and insurance proceeds and this lien is valid to the full extent of the loan. In this event, the car creditor would receive payments in full on both the allowed secured and allowed unsecured portions of the claim despite the fact that unsecured claims are scheduled to receive a 0% dividend.

3. Trustee alleges she may be obligated, in accordance with the application of 11 U.S.C. § 506(a), to pay Cordes' allowed secured claim, i.e., funds (insurance proceeds) up to the value of the collateral as specified in the confirmed Chapter 13 Plan (the "Plan"), with the rest of the proceeds to go to the Debtor under application of the revesting provision of 11 U.S.C. § 1327 and Debtor's exemption of the vehicle.

4. Debtor has counterclaimed for the balance of the funds held by the Trustee, which funds are the balance of the insurance proceeds, after application of the proceeds to Cordes' allowed secured claim. Debtor relies upon the terms of 11 U.S.C. § 1327 and the "revesting" of property of the bankruptcy estate in the Debtor after confirmation of the Plan. The subject vehicle was exempted in Debtor's schedules, without objection. Debtor claims lien rights to the vehicle survive only up to the established value of the collateral vehicle, as of the effective date of the Plan, and is binding on all parties by confirmation of the Plan.

Debtor also asserts that acceptance of funds through disbursement of the insurance proceeds, by the Trustee paying off the balance of Cordes' allowed secured claim, and Cordes' agreement to the motion for valuation figure constitutes accord and satisfaction. Thus, allegedly, Cordes waived any further rights or claims against the Debtor, the Trustee, or funds held by the Trustee.

5. Cordes counterclaimed and demanded payment of the funds held by the Trustee. Cordes makes its claim in reliance upon the analysis of the *Simmons, Howard, Dewsnup,* and *Nobelman* cases, *supra.*

6. On or about September 10, 1990, Debtor purchased a 1990 Dodge Daytona automobile (the "Vehicle") from Cordes, pursuant to a retail installment sales contract. Cordes recorded a motor vehicle lien with the State of Oklahoma and is listed as record lienholder on a State of Oklahoma Certificate of Title, all as set forth in Cordes' proof of claim filed herein on February 11, 1991. Debtor filed her Chapter 13 petition on December 31, 1990, and the balance owing on the retail installment sales contract as of that date was $13,700.

7. Debtor's Plan, as confirmed by this Court, without objection, on April 22, 1991, valued the Vehicle at $9,512.50. Accordingly, the Plan provided Cordes: (a) an allowed secured claim of $9,512.50; and (b) an allowed unsecured claim of $4,187.50, as a "deficiency" unsecured claim, which was scheduled to receive a 0% dividend, together with Debtor's other unsecured creditors, for a total of $13,700.

On January 15, 1991, Debtor filed her Plan summary valuing the Vehicle at $7,800. The parties stipulated that Cordes verbally objected to such valuation, and, as a result, Debtor and Cordes agreed to a valuation of $9,512.50, payable at $241.26 per month and an interest rate of 10%. This figure was contained in Debtor's modified Plan and motion for valuation dated March 11, 1991.

8. The Trustee made regular monthly payments on Cordes' allowed secured claim to Cordes, pursuant to Debtor's Plan, including 10% interest, totaling $6,543.35 through March 1993. Then, on or about April 29, 1993, the Vehicle was totaled in an accident. The Trustee received $8,395.13 in insurance proceeds funds and paid off the remaining balance of Cordes' secured claim, together with interest, as set forth below. This $8,395.13 payment by Allstate represented final settlement of Debtor's insurance claim arising from the total loss of the Vehicle on April 29, 1993. Said funds were paid by means of a check or draft drawn upon Allstate County Mutual Insurance Company, dated May 13, 1993, and payable to "Lecinda M. Calder and Molly Bartholow, Bankruptcy Trustee". Debtor endorsed the check or draft, tendered it to the Trustee, who depos-

ited it on or about May 21, 1993. Under Allstate's insurance policy, Debtor and Cordes were loss payees (Plaintiff's Exhibit ("PX") F) as their interests may appear (PX E).

9. From said funds, the Trustee paid off the remaining balance of Cordes' allowed secured claim, in the principal amount of $4,630.34, plus $77.18 in interest ($4,707.52). The sum total paid to Cordes on the allowed secured claim, together with interest, is $11,-250.87. Cordes has made demand upon the Trustee for the entirety of the insurance proceeds, although Cordes cashed the check tendered to it by the Trustee in the amount of $4,707.52. Cordes is therefore claiming of and against the Trustee for the said remaining insurance proceeds balance of approximately $3,233.16 (sum remaining after deducting the Trustee's statutory fee in connection with disbursement of sum to Cordes). The Trustee has segregated these funds and holds them pending the outcome of this action.

### Conclusions of Law

■ 1. Cordes' actions delayed Allstate receiving title to the Vehicle after paying off the balance of the insurance. $700, plus costs, was found to be Allstate's reasonable fees and expenses. However, under 28 U.S.C. §§ 2201 and 2202, the statutes under which the action of the Trustee and Allstate's counterclaim were brought, attorney fees are not normally recoverable. Therefore, Allstate is denied attorney fees.

■ 2. Debtor is entitled to the $3,233.16 under the doctrine of accord and satisfaction. *See generally,* 1 Tex Jur 3d, Accord and Satisfaction § 1 *et seq.* The initial Plan summary, with a $7,800 valuation was filed January 15, 1991. There was then a disagreement between Debtor and Cordes as to the value of the Vehicle that should be paid to Cordes. As a result of such disagreement, Debtor increased the value to $9,512.50, and filed a motion for valuation, with such agreed figure in it. Cordes did not object to confirmation valuation at such figure. Cordes' proof of claim was filed February 11, 1991.

The motion for valuation, with the increased agreed valuation was filed March 11, 1991, and the Plan was confirmed on April 22, 1991.

3. Neither *Matter of Howard, supra,* nor *In re Simmons, supra,* applies because of the doctrine of accord and satisfaction. Further, *Matter of Howard* and *In re Simmons* are distinguishable because Cordes did participate in the confirmation process, and there was a motion for valuation served on Cordes for a valuation figure agreed to between Debtor and Cordes, and a confirmation thereafter, based upon such agreed valuation. *Also see, In re Tucker,* 35 B.R. 35 (Bankr. M.D.Tenn.1983).

4. *Matter of Edgeworth,* 993 F.2d 51 (5th Cir.1993) and *First Fidelity Bank v. McAteer,* 985 F.2d 114 (3rd Cir.1993) (credit life insurance policy)[1] do not apply because Cordes was only entitled with Debtor to recover as their interests may appear. Thus, Cordes was only entitled to what the records showed it was entitled to as between Debtor and it.

5. While the cases of *In re Tucker, supra,* and *In re Pointless,* 93 B.R. 23 (Bankr. W.D.N.Y.1988), are also contrary to Cordes' position, it appears that such courts are not affected by (*Matter of Howard* ) precedent in the Fifth Circuit. This case is decided on the limited issues presented.

---

**1.** In *McAteer,* a definite amount was payable by the insurance company to the creditor; whereas, in this case, lessor and creditor would be entitled to their share of the proceeds as their interests between them existed after an agreed valuation.