**FIRST FIDELITY BANK**

v.

**Raymond McATEER; Helen McAteer, Debtors.**

**Robert M. Wood, Trustee.**

**First Fidelity Bank, N.A., Appellant.**

**No. 92–5243.**

United States Court of Appeals, Third Circuit.

Argued Nov. 19, 1992.

Decided Feb. 3, 1993.

* As to panel rehearing only.

David E. Ewan (argued), Begley, McCloskey & Gaskill, Moorestown, NJ, for appellant, First Fidelity Bank, N.A.

Eric J. Clayman (argued), Jenkins & Jenkins, Haddon Heights, NJ, for debtors/appellees, Raymond McAteer and Helen McAteer.

Present: MANSMANN and HUTCHINSON, Circuit Judges, and BARTLE, District Judge *.

## OPINION OF THE COURT

BARTLE, District Judge.

This appeal raises the question whether proceeds of a credit life insurance policy

* Hon. Harvey Bartle, III, District Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

are the property of the estate of a bankrupt debtor which owns the policy, or the property of the creditor beneficiary of the policy.

The facts are not in dispute. Debtor Raymond McAteer purchased a Mitsubishi Pick–Up Truck in 1989 through a retail installment contract which was assigned to First Fidelity Bank, N.A., South Jersey ("FFB"). Under the installment contract Mr. McAteer's total indebtedness amounted to $14,195.40. As security for the loan, Mr. McAteer purchased a credit life and credit disability insurance policy naming FFB as the primary beneficiary and Mr. McAteer's estate as the secondary beneficiary. According to the policy, in case of Mr. McAteer's death, the insurance company would pay to FFB any amount remaining according to the schedule of indebtedness, plus up to two months' arrearage. Conversely, if Mr. McAteer died having prepaid some of the loan, the insurance company would pay the amount actually owed to the bank, and the excess to Mr. McAteer's estate as secondary beneficiary.

On March 28, 1989, Raymond H. McAteer and his wife Helen D. McAteer filed a joint Chapter 13 bankruptcy petition. Under the confirmed plan, FFB's claim, which at that time amounted to $13,722.22 was "crammed down" to the fair market value of its collateral, the Mitsubishi truck, valued at $7,525.00 on the date the debtors' petition was filed, plus 10% of the $6,197.22 unsecured balance of the loan.[1] FFB did not object to the plan. On February 5, 1990, after the Chapter 13 plan was confirmed, Mr. McAteer died. The insurance company thereafter paid FFB $11,356.32, the amount due on the date of death, according the schedule of indebtedness, plus two months' arrearage. Helen McAteer moved in the Bankruptcy Court to compel FFB to turn over to the estate the insurance proceeds in excess of the amount due FFB under the confirmed plan. The Bankruptcy Court ordered all proceeds in excess of the allowed secured claim turned over to the debtor's estate. *Matter of McAteer*, 130 B.R. 726 (Bankr.D.N.J.1991). The district court affirmed the bankruptcy court's order. We reverse.

The parties agree that the credit life insurance policy itself is property of the estate under Section 541(a) of the Bankruptcy Code, 11 U.S.C. § 541(a). Under this section, the estate includes:

(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.

.    .    .    .    .

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

.    .    .    .    .

(C) as a beneficiary of a life insurance policy or of a death benefit plan.

11 U.S.C. § 1306 further defines the property of the estate in Chapter 13 cases:

(a) property of the estate includes, in addition to the property specified in sec. 541 of this title—(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed or converted to a case under Chapter 7, 11, 12 ...

This Court has held that insurance policies are property of the estate "even though the policy has not matured, has no cash surrender value and is otherwise contingent." *Estate of Lellock v. Prudential Ins. Co.*, 811 F.2d 186, 189 (3d Cir.1987) (quoting *In*

---

**1.** The term "Cram Down" refers to the process under § 1325(a)(5)(B)(i) whereby a chapter 13 plan may be confirmed without the consent of secured creditors. Under this section, the plan must provide that a secured creditor retain his lien on secured property until property having a value at least equal to the present value of the security, as determined by the court, is distributed to the creditor under the plan. Any amount owed the creditor in excess of the value of the secured property is treated as an unsecured claim. In this case, the "cram down" amount is the court determined value of the security, the Mitsubishi truck, plus 10% of the unsecured balance of the loan. *See* 5 Conrad Cyr, et al., *Collier on Bankruptcy*, ¶ 1325.06, at 1325–38– 46.1 (15th ed.1992); *In re Szostek*, 886 F.2d 1405, 1413 (3d Cir.1989).

re McCulloch & Son, Inc., 30 B.R. 7, 8 (Bankr.D.Or.1983)).

■ Ownership of a life insurance policy, such as involved here, does not necessarily entail ownership of the proceeds of that policy. Several different parties may have a property interest in such a policy or its proceeds, including the owner, the insured, and the beneficiary, all of whom may be different persons.[2] A purchaser or owner may take out a policy, for example, on the life of a person in whom he or she has an insurable interest such as a spouse and name a child as the beneficiary. On the other hand, the owner may buy a policy on the life of his or her spouse and name himself or herself as beneficiary. In any event, once the insured dies, the beneficiary, who may or may not be the owner of the policy, becomes entitled to the proceeds of the policy. Aetna Life Ins. Co. of Hartford, Conn. v. Acker, 93 F.2d 975 (3d Cir. 1937).

■ Furthermore, if the owner of a life insurance policy did not have an interest in its proceeds, the filing of the petition in bankruptcy cannot create one. 11 U.S.C. § 541(d) provides:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Thus, "the estate's legal and equitable interests in property rise no higher than those of the debtor," In re Gagnon, 26 B.R. 926, 928 (Bankr.M.D.Pa.1983). The estate in bankruptcy only includes property to which the debtor would have had a right if the debtor were solvent. In re Louisiana World Exposition, Inc., 832 F.2d 1391, 1401 (5th Cir.1987).

In In re Louisiana World, the court distinguished between ownership of a liability insurance policy and the right to certain benefits under that policy. There, the creditor's committee of a debtor corporation, Louisiana World Exposition, Inc. ("LWE") sought to halt the payment of legal expenses to the debtor's officers and directors under liability policies owned by the debtor. The Court held that the proceeds of a liability insurance policy belonged to the insureds, the corporation's officers and directors, even though the debtor corporation owned the policy. The debtor had no ownership interest in any proceeds of the policy because the obligation of the insurance company was solely to the named insureds. Id. at 1400–01.

As the court in In re Louisiana World noted, the situation is comparable to cases where the debtor assigns away the proceeds of an insurance policy. In In re Moskowitz, 14 B.R. 677, 680–81 (Bankr. S.D.N.Y.1981), for example, the court held that the proceeds of a medical insurance policy, which one of the debtors had assigned to a hospital upon admittance, and which were paid to the hospital three months prior to the debtors' Chapter 11 filing, were not a part of the debtors' estate.

In this case the parties concede that the life insurance policy, owned by debtor Mr. McAteer, named FFB as the primary beneficiary and Mr. McAteer's estate as secondary beneficiary. The policy provided that proceeds would only be payable to Mr. McAteer's estate if the benefit payable exceeded the debt. Thus, the question becomes whether, as FFB contends, the "debt" owed by Mr. McAteer is the amount due according to the installment contract for the Mitsubishi truck or whether, as the debtor contends, it is the lesser "cram down" amount under the confirmed plan. To support its position, the debtor relies on 11 U.S.C. § 1327(a) which provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor...." Debtor also cites Section 1322(b)(2) which allows a debtor to "modify the rights of holders of secured claims ..." Under debtor's theory, the insurance proceeds are available to FFB only to satisfy the remaining debt as

---

2. Similarly, an automobile insurance policy may insure and provide benefits to persons other than the owner, such as members of his or her family.

altered by the plan, with the excess belonging to the bankrupt estate.

■ While it is true that the bankruptcy court's confirmation of the plan binds the debtor and all creditors vis-a-vis the debtor, it does not follow that a discharge in bankruptcy alters the right of a creditor to collect from third parties. Section 524(e) specifically limits the effect of a discharge. It provides that "... discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." This section assures creditors that the discharge of a debtor will not preclude them from collecting the full amount of a debt from co-debtors or other liable parties. In *Union Carbide Corp. v. Newbowles*, 686 F.2d 593 (7th Cir.1982) the court, interpreting the predecessor to Section 524(e) under the Bankruptcy Act,[3] held that a creditor may collect the full amount of its loan from the guarantors of the loan despite the bankruptcy discharge. The court explained that "a bankruptcy discharge arises by operation of federal bankruptcy law, not by contractual consent of the creditors" and that "[a] creditor's approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy proceedings ..." *Id.* at 595. Thus, the receipt of payment under the plan does not operate to release non-debtor parties from their obligations to the extent of non-payment. Similarly, in *Mellon Bank v. M.K. Siegel*, 96 B.R. 505 (E.D.Pa.1989), the bankruptcy court held that it may not order the confirmation of a Plan of Reorganization that purports to be in full settlement of all claims a creditor may have against a guarantor who is not a party to the Chapter 11 proceeding. The court noted that "[w]hile the Bankruptcy Code expressly alters the contractual obligations of the bankrupt, it does not contemplate the same effect on the obligations and liabilities of third parties to a creditor." *Id.* at 506; *see also, Matter of Sandy Ridge Development Corp.*, 881 F.2d 1346 (5th Cir.1989); *Underhill v. Royal*, 769 F.2d 1426, 1432 (9th Cir.1985).

■■ Furthermore, the protection from liability afforded the debtor under the Code does not affect the liability of the debtor's insurers. Courts, relying on 11 U.S.C. § 524(e), have allowed claimants to proceed with tort claims against the debtor for the purpose of collecting from the debtor's liability insurer. *See e.g. Green v. Welsh*, 956 F.2d 30 (2d Cir.1992); *In re Jet Florida Systems, Inc.*, 883 F.2d 970 (11th Cir.1989). Thus, the creditor remains free to collect the full amount of the original obligation from any non-debtor party such as a guarantor or insurer.

The court's decision in *In re Offshore Carrier and Liner Service, Inc.*, 82 B.R. 504 (Bankr.E.D.Mo.1988) is particularly instructive. There, the debtor had chartered a barge which sank. The barge owner sought to recover the proceeds of an insurance policy procured by the debtor pursuant to the charter agreement. The policy named the barge owner as loss payee. The debtor asserted a right to all proceeds of the policy in excess of the fair market value of the vessel. The policy, however, provided for coverage of the value as agreed between the barge owner and the debtor charterer. The court held that because the owner was named as loss payee, the debtor's interest was no greater than any proceeds remaining after the loss payee received the agreed value of the insured property. The court explained that "[n]either bankruptcy law, nor principles of equity will operate in these circumstances to require a perversion of the contract's terms to reduce the value of the Owner's interest to the fair market value of the insured property." *Id.* at 506.

■ In sum, the debtor Raymond McAteer simply owned the credit life insurance policy. FFB, and not McAteer, was the primary beneficiary. FFB's interest in the proceeds of the life insurance policy is not the property of the debtor's estate and thus cannot be altered by the confirmation of

---

**3.** Section 16 of the Bankruptcy Act of 1898, 11 U.S.C. § 34, provided, "[t]he liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt."

the Chapter 13 plan. Under the life insurance policy, in case of Mr. McAteer's death, the insurance company was required to pay the amount remaining under the schedule of indebtedness to FFB, the primary beneficiary. The confirmation of McAteer's Chapter 13 plan did not work to erase or alter FFB's right, as a third party beneficiary, to collect from the insurance company. Rather McAteer's discharge altered FFB's rights to collect from McAteer or from property of the estate.[4] Therefore, the bankruptcy court cannot now alter the insurance contract's terms by reinterpreting the "debt" to mean the smaller "cram down" amount.[5]

Accordingly, the order of the district court, affirming the order of the bankruptcy court, is reversed.

4. Of course, FFB cannot collect both from the insurance company and from the bankrupt estate. Once the insurance company pays the debt, FFB's claim against the bankrupt estate is eliminated.

5. We recognize that the district court also reached the opposite result in *First Fidelity Bank, N.A. v. Behr*, 1991 WL 195767 (D.N.J. 1991), but are persuaded otherwise for the reasons set forth in this opinion.