**In re Charles L. JONES, Debtor.**

**Charles L. JONES, Plaintiff,**

**v.**

**GE CAPITAL MORTGAGE COMPANY and Edward Sparkman, Trustee, Defendants.**

Bankruptcy No. 92–10586DAS.
Adv. No. 94–0710DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 22, 1995.

Michael D. Ward, Philadelphia, PA, for debtor/plaintiff Charles L. Jones.

Joan Brodsky, Federman & Phelan, Philadelphia, PA, for defendant GE Capital Mortg. Co.

Edward Sparkman, Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

The instant adversary proceeding presents the issue of whether a mortgage company may be held liable for damages when it refused to promptly turn over, to the Chapter 13 Debtor or the Standing Chapter 13 Trustee ("the Trustee"), insurance proceeds resulting from postpetition property damage to the Debtor's property. While we agree with the Debtor that the insurance proceeds are property of the Debtor's estate under 11 U.S.C. § 541(a)(6), we also hold that the estate's interest in the proceeds is subject to a contractual provision in the Debtor's mortgage agreement which vitiated the Mortgagee's obligation to turn over the proceeds to the estate. Therefore, we find that the Mortgagee is not liable to the Debtors. Further, we note that, had the Mortgagee been held liable for failing to immediately turn over the insurance proceeds, the Debtor completely failed to meet his burden of proving the damages rightfully payable to him.

### B. PROCEDURAL AND FACTUAL HISTORY

On February 3, 1992, CHARLES L. JONES ("the Debtor") filed the individual Chapter 13 bankruptcy case underlying this proceeding. This court confirmed the Debtor's Chapter 13 plan on October 6, 1992. At all times prior to confirmation, the Debtor was represented in this case by Thomas J. Turner, III ("Turner").

Since confirmation, the Debtor has made all scheduled payments to the Trustee pursuant to his confirmed plan. However, the Plan contemplated only the curing of arrears due to GE CAPITAL MORTGAGE COMPANY ("the Mortgagee"). Allegedly because Turner led him to believe that his payments to the Trustee would pay off the mortgage completely, the Debtor has failed to make any of the regularly-due postpetition monthly payments of $353.18 to the Mortgagee. This court takes notice of Turner's suspension from the practice of law, and that deficiencies in Turner's work-products similar to that claimed by the Debtor were not uncommon. See In re Gunn, 171 B.R. 517, 519 (Bankr. E.D.Pa.1994).

On January 20, 1994, in the course of a severely cold and stormy winter season, two main water pipes burst at the Debtor's residence at 2842 South Marshall Street, Philadelphia, Pennsylvania 19148 ("the Home"). Water from the broken pipes flooded the Home, causing serious damage to the interior of the Home and to the Debtor's furniture and other personal contents. The flooding also caused the Debtor's heater to malfunction, leaving the Debtor without any heat. According to the Debtor, all of this damage made his house "unlivable." Initially, the Debtor and his live-in female companion purchased two kerosene space heaters and remained in the Home until March 1994. At about that time, the Debtor moved in with his brother-in-law for approximately three months. During that three-month period, the Debtor's companion left. The broken pipes were repaired in February 1994, but the other damage to the Home, including the broken heater, was not rectified until December 1994.

Immediately after the January 20 incident, the Debtor made a claim to his homeowners' insurance carrier, Transamerica Insurance Co. ("Transam"). Pursuant to the Debtor's claim, Transam, in April 1994, issued checks to the Debtor to cover the cost of his living expenses, contents damage, and plumbing repairs. These payments were made by checks drawn exclusively to, and were paid directly to, the Debtor, and totalled approximately $4,700.00. Transam also drew checks

to compensate the Debtor in February 1994 for damage done to the Home and repair costs for the heater by issuing two checks in the amounts of $2,000.00 and $3,686.06, respectively. These latter checks were also sent to the Debtor, but were made payable jointly to the Debtor and the Mortgagee.

The Debtor had several telephonic discussions with the Mortgagee's representatives in Texas concerning the disposition of these latter two checks. At the Mortgagee's direction, the Debtor endorsed the checks and remitted them to the Mortgagee, assuming that they would be endorsed by the Mortgagee and returned to him to utilize for repairs on the Home. However, because of the substantial delinquency in the Debtor's postpetition mortgage payments to it, the Mortgagee refused to relinquish the proceeds of these checks, and its agent insisted that the Mortgagee had the right to credit the payments to the payment delinquency balance.

Learning from the Mortgagee's agent of Turner's suspension, the Debtor retained his present counsel, Michael D. Ward, Esquire ("Ward"). Ward discovered a $20,000 error in the calculation of the Mortgagee's total claim, which the Mortgagee corrected. He also attempted to persuade the Mortgagee to release the insurance proceeds to the Debtor. Being unsuccessful in recovery of the proceeds, Ward instituted this proceeding on September 28, 1994, naming the Mortgagee and the Trustee as Defendants, and claiming that the turnover of the proceeds was required by 11 U.S.C. § 542(a). After the complaint in the proceeding was filed, in December 1994, the Mortgagee voluntarily released the $5,686.06 check proceeds to the Debtor.

At trial, the Debtor testified that he used the $4,700 in proceeds to not only repair the Home's interior, but also to pay his brother-in-law rent for the use of this residence. He further contended that the Mortgagee's allegedly wrongful failure to immediately turn over the $5,686.06 insurance proceeds in issue for the ten-month period between February 1994 and December 1994 had precluded his timely repair of his heater and led to the loss of his relationship with his female companion. He therefore sought damages, quan-

tified neither in his Complaint, his testimony at trial, nor his post-trial submission, for his inconvenience and suffering due to the delay in the repair of the Home.

## C. DISCUSSION

The Debtor's claim for damages requires us to first consider whether the proceeds of the insurance policy are "property of the Debtor's estate" under 11 U.S.C. § 541(a)(6). If the proceeds are determined to be property of the estate, we must then analyze whether the provisions in the mortgage agreement relating to disposition of the insurance proceeds alleviated the Mortgagee's duty to turn over the property of the estate to the Debtor or the Trustee. If the mortgage agreement is found not to permit the Mortgagee to withhold the proceeds, we must then consider whether the Debtor proved that he suffered quantifiable damages as a result of the Mortgagee's failure to immediately turn over the insurance proceeds to him or to the Trustee.

1. THE PROCEEDS OF THE INSUR-ANCE ARE PROPERTY OF THE DEBTOR'S ESTATE UNDER 11 U.S.C. § 541.

The first question to be considered is the status of insurance proceeds as "property of the Debtor's estate." It is clear that an issue is presented as to whether the sums represented thereby fall within the scope of 11 U.S.C. § 541(a)(6), which provides as follows:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held:

·     ·     ·     ·     ·

(6) *Proceeds,* product, offspring, rents or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case (emphasis added).

The mortgage agreement executed by the Debtor and ultimately assigned to the Mortgagee addresses the parties' responsibilities

and rights in reference to hazard insurance in the following paragraph:

6. Mortgagor will continually maintain hazard insurance, of such type or types and amounts as the Mortgagee may from time to time require, on the improvements now or hereafter on said premises, and except when payment for all such premiums has theretofore been made under (a) of paragraph 2 hereof, will pay promptly when due any premiums therefor. All insurance shall be carried in companies approved by Mortgagee and the policies and renewals thereof shall be held by Mortgagee and have attached thereto loss payable clauses in favor of and in form acceptable to Mortgagee. In event of loss, Mortgagor will give immediately notice by mail to Mortgagee, and Mortgagee may make proof of loss if not made promptly by Mortgagor. *Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Mortgagee instead of to Mortgagor and Mortgagee jointly. The insurance proceeds, or any part hereof, may be applied by Mortgagee at its option either to the reduction of the indebtedness or to the restoration or repair of the property damaged.* In the sole and absolute discretion of Mortgagee, in event of foreclosure of the Mortgage or transfer of title in the mortgaged property in partial or total extinguishment of the Note hereby secured, all right, title, and interest of Mortgagor in and to any insurance policies then in force shall pass to the purchaser or grantee or shall be canceled and the cancellation proceeds, if any, retained by Mortgagee. Full power is hereby given to Mortgagee to settle or compromise all claims under such policies and to demand, receive and receipt for all moneys becoming payable thereunder (emphasis added).

■ We begin our analysis of the "property of the estate" issue by noting that this term is very broad, generally encompassing "all legal or equitable interests of the debtor in property." *See* 11 U.S.C. § 541(a)(1). *See also e.g., United States v. Whiting Pools, Inc.,* 462 U.S. 198, 203–05, 103 S.Ct. 2309, 2312–14, 76 L.Ed.2d 515 (1983); *In re Sacred Heart Hospital of Norristown,* 175 B.R. 543,

549–50 (Bankr.E.D.Pa.1994); and 4 COLLIER ON BANKRUPTCY, § 541.01, at 541–5 (15th ed. 1994). We note that this court has held that, even though third parties were found to be entitled to possession of certain funds in issue, the interests of the respective debtors in those funds can be found to be within the broad scope of property of the respective debtors' estates. *See In re CS Associates,* 121 B.R. 942, 958–60 (Bankr. E.D.Pa.1990); *In re Summit Airlines, Inc.,* 94 B.R. 367, 370 (Bankr.E.D.Pa.1988), *aff'd,* 102 B.R. 32 (E.D.Pa.1989); and *In re Temp–Way Corp.,* 80 B.R. 699, 702 (Bankr.E.D.Pa. 1987).

■ The Home is property in which the Debtor clearly had a "legal or equitable interest" prior to the commencement of the instant bankruptcy case, and thus the Home itself has at all times clearly been property of the Debtor's estate, pursuant to 11 U.S.C. § 541(a)(1). After the commencement of the case, the broken water pipes caused damage to the property and Transam compensated for that damage by issuing the checks in the appropriate amounts. As the court held in *Payne v. Wood,* 775 F.2d 202, 204 (7th Cir. 1985), *cert. denied,* 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986), "[o]nce property enters the estate, it does not matter whether the property changes form." *Id.* Thus, it is appropriate to conclude that, since the Home was and is property of the estate which was partially liquidated into insurance proceeds. Numerous cases have consistently held that hazard insurance proceeds generated during the course of a bankruptcy case by damage to a debtor's property are themselves property of the debtor's estate. *See, e.g., Tringali v. Hathaway Machinery Co.,* 796 F.2d 553, 560–61 (1st Cir.1986); *Bradt v. Woodlawn Auto Workers, F.C.U.,* 757 F.2d 512, 515 (2d Cir.1985); *Grillo v. Zurich Insurance Co.,* 170 B.R. 66, 69 (S.D.N.Y.1994); *In re Reed,* 94 B.R. 48, 52–53 (E.D.Pa.1988); *In re Hill,* 174 B.R. 949 (Bankr.S.D.Ohio 1994); *In re Natale,* 174 B.R. 362, 365 (Bankr.D.R.I.1994); *In re Calder,* 171 B.R. 36, 37 (Bankr. N.D.Tex.1994); *In re Woods,* 97 B.R. 850, 851–52 (Bankr.W.D.Va.1989); *In re Fox,* 80 B.R. 753, 756–57 (Bankr.W.D.Pa.1987); and *In re Hawkeye Chemical Co.,* 71 B.R. 315,

319–20 (Bankr.S.D.Iowa 1987). *But Cf. In re Lancaster Residential Investors,* 2 B.R. 140, 144–45 (Bankr.E.D.Pa.1980) (liability insurance proceeds were not within the scope of property belonging to a debtor or its estate under the predecessor Bankruptcy Act due to the effect of the "standard mortgagee clause" in the parties' mortgage).

■ Thus, we hold, without reservation, that the postpetition insurance proceeds that were payable on account of the damages which occurred to the Home on January 20, 1994, are property of the Debtor's estate. However, we re-emphasize our previous statement that the fact that the proceeds are "property of the Debtor's estate" is not conclusive of the critical issue of whether the Debtor or the Trustee was entitled to an immediate turnover of the proceeds.

2. THE RIGHTS OF THE MORTGAGEE IN THE INSURANCE PROCEEDS AT ISSUE, AS PROVIDED FOR IN THE PARTIES' MORTGAGE AGREEMENT, NEGATES ANY DUTY ON THE PART OF THE MORTGAGEE TO TURN OVER THE PROCEEDS TO THE DEBTOR OR TO THE TRUSTEE.

While the insurance proceeds are property of his estate, the Debtor must nevertheless establish that his estate's interest in the proceeds entitled him or the Trustee to their immediate possession.

■ The Debtor's right to turnover of the insurance policy's proceeds, pursuant to 11 U.S.C. § 542(a), is limited by the contractual provisions within that policy. As the court holds in *First Fidelity Bank v. McAteer,* 985 F.2d 114, 117 (3d Cir.1993), "[o]wnership of [an insurance policy] does not necessarily entail ownership of the proceeds of that policy." Under the reasoning of *McAteer,* the owner of an insurance policy cannot obtain greater rights to the proceeds of that policy than he would have under state law by merely filing a bankruptcy petition. *Id.* Thus, the Debtor's rights to the proceeds of his policy are inevitably subject to the contractual restrictions in his insurance policy and mortgage agreement.

We recognize that *McAteer* attains the result reached by concluding that the insurance proceeds in issue were not even property of the debtor's estate. *Id.* at 117. *Accord, In re Edgeworth,* 993 F.2d 51, 55–56 (5th Cir. 1993) (proceeds of an insurance policy were not property of the debtor's estate even though the policy was property of the estate); *Estate of Lellock v. Prudential Insurance Co.,* 811 F.2d 186, 187–90 (3d Cir.1987); *In re Louisiana World Exposition, Inc.,* 832 F.2d 1391, 1398–1401 (5th Cir.1987); *In re Johnson,* 162 B.R. 464 (Bankr.M.D.N.C.1993); and *In re Goodenow,* 157 B.R. 724, 725 (Bankr.D.Me.1993). The contrast between the position of those courts and that of this court is explained in part by the fact that these cases did not involve hazard policies, but rather involved life, disability, or malpractice insurance. Such policies, unlike hazard policies, are difficult to conceptualize as involving the proceeds of property of the estate, pursuant to 11 U.S.C. § 541(a)(6). It is also partly explained by the tendency of some courts to attach overriding significance to the determination of the issue of whether certain property is property of the estate in deciding the respective rights of parties to certain property. *Compare Sacred Heart Hospital, supra,* 175 B.R. at 549–50, with *In re Columbia Gas Systems, Inc.,* 997 F.2d 1039, 1059 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1050, 127 L.Ed.2d 372 (1994).

■ However, taking the path of this court, the *Natale* court, *supra,* 174 B.R. at 365, concludes that, even though the hazard insurance proceeds in issue are property of the debtor's estate, the debtor's estate holds that property interest subject to the contractual, state laws rights which the mortgagee holds in the proceeds. Therefore, the parties' rights to the proceeds must be ascertained by reference to the parties' contractual rights pursuant to the interpretation of the pertinent contractual provisions under applicable state law.

The portions of the mortgage emphasized at pages 453–54 *supra* clearly provide the Mortgagee with the absolute discretion to keep or disperse any insurance proceeds arising from damages to a mortgaged prop-

erty that is currently in arrears. The Debtor has not made any postpetition payments to the Mortgagee since October, 1992. Clearly, he is in arrears in an amount well in excess of the $5,686.06 total of the two checks. Thus, not only did the Debtor not have any right to an immediate payment of the insurance proceeds, he did not have any right to the proceeds at all under the terms of the parties' mortgage agreement.

In its brief, the Mortgagee argues that the "standard mortgagee clause," providing a mortgagee with the protections under a hazard policy as a loss payee, is sufficient to entitle the mortgagee to hazard policy proceeds. *See Lancaster Residential Investors, supra,* 2 B.R. at 144; *World of Tires, Inc. v. America Insurance Co.,* 360 Pa.Super. 514, 519, 520 A.2d 1388, 1390 (1987); and *Satchell v. Insurance Placement Facility of Pa.,* 241 Pa.Super. 287, 297, 361 A.2d 375, 380 (1976). In *Pearson Mfg. Co. v. Pittsburgh Steamboat Co.,* 309 Pa. 340, 344, 163 A. 680, 682 (1932), the court held that the mortgagee retained rights in the proceeds even in the absence of a pertinent provision in an applicable mortgage document. If nothing else, these authorities establish that clauses such as the pertinent provision regarding the distribution of insurance proceeds in the mortgage in issue are enforceable in favor of the instant Mortgagee.

█ At trial, the Debtor made a vague invocation of principles of waiver or estoppel against the Mortgagee due to its allegedly inconsistent actions in asserting its claims to the proceeds. The Debtor took particular offense at the assertions of the Mortgagee's agents that the Mortgagee was entitled to all of the proceeds, including the $4,700 paid directly to the Debtor in April 1994.

█ A waiver requires a voluntary relinquishment by the party charged of a known right. *See In re Car–Gill, Inc.,* 125 B.R. 133, 137 (Bankr.E.D.Pa.1991). Estoppel requires conduct which includes, *inter alia,* false representations by the party charged and a change of position by the charging party in reliance upon those misrepresentations. *See id.* at 137–38; and *In re Bell,* 97 B.R. 208, 213–15 (Bankr.E.D.Pa. 1989). The testimony at trial indicated that

the Mortgagee's agents, rather than sleeping on their rights, vigorously asserted their right to all of the proceeds from the outset. As it develops, this assertion was correct under the terms of the mortgage.

The Mortgagee relinquished no rights except as to the $4,700 proceeds received by the Debtor in April 1994 and, ultimately, to continued possession of the $5,686.06 proceeds. No effort has been made by the Mortgagee to recover these proceeds. The representations to the Debtor by the Mortgagee's agents, while perhaps not made politely or with appropriate empathy for the Debtor's plight, were not false, but were in fact accurate. There is no allegation that the Debtor changed his position in any way in reliance on any representations by the Mortgagee's agents. Hence, no waiver or estoppel may be invoked against the Mortgagee.

In sum, the Debtor has not established that he or the Trustee had a right to any of the insurance proceeds in issue at any time. The Mortgagee therefore has no possible liability to him in this proceeding for its proper assertion of its rights to retain the proceeds.

3. ASSUMING *ARGUENDO* THAT THE DEBTOR HAD ESTABLISHED LIABILITY ON THE PART OF THE MORTGAGEE, HE FAILED TO MEET HIS BURDEN OF PROVING ANY DAMAGES.

In light of the Mortgagee's voluntary relinquishment to him of all of the disputed proceeds prior to trial, the Debtor was confined, in this proceeding as tried, to the recovery of monetary damages to compensate for the delay in remitting the final $5,687.06 in proceeds to him.

█ Even had the Debtor established some measure of liability to him on the part of the Mortgagee for this delay, the Debtor bore the burden of quantifying his damages. *See Rochez Bros. v. Rhoades,* 527 F.2d 891, 894 (3d Cir.1975); *Safeguard Scientifics, Inc. v. Liberty Mutual Insurance Co.,* 766 F.Supp. 324, 344–35 (E.D.Pa.1991), *aff'd in part & rev'd in part,* 961 F.2d 209 (3d Cir.

1992); and *In re Fricker,* 113 B.R. 856, 869–70 (Bankr.E.D.Pa.1990).

The Debtor totally failed to meet this burden. We appreciate that the Home was without heat from January through December 1994. The Debtor also testified that other needed repairs were, of necessity, deferred until the proceeds were received in December 1994. However, it would seem that he could have used a portion of the first proceeds received in April 1994 to start with the most critical repairs. Instead, he claims to have used these proceeds to repay his brother-in-law for rent.

The subject of rent raises the additional question of why the Debtor would remain in the Home during the remainder of the winter and then relocate to the home of his brother-in-law in spring, when the weather got warmer and the Home would almost certainly have become more livable. Had he remained in the Home, the rent would not have had to have been paid. Frankly, we question the accuracy of the sequence of events as described by the Debtor. However, even if we did not, the Debtor has given us no logical basis upon which we could quantify any damages to him. *See Fricker, supra,* 113 B.R. at 869–70 (plaintiff must prove damages proximately caused by the defendant's conduct with reasonable certainty). *Compare In re Chapman,* 77 B.R. 1, 5–7 (Bankr.E.D.Pa. 1987) (plaintiff awarded damages proven, with considerable effort, to be reasonable, even if proof was not precise).

Therefore, even if the Mortgagee's liability to the Debtor had been established, his failure to present evidence sufficient to support an award of damages would have precluded entry of a judgment in his favor.

### D.  CONCLUSION

For all of the reasons set forth herein, this court is obliged to enter judgment in this proceeding in favor of the defendant Mortgagee.

### ORDER

AND NOW, this 22nd day of March, 1995, after a trial of the above adversary proceeding on January 24, 1995, and upon consideration of the parties' respective post-trial submissions, it is hereby

ORDERED AND DECREED that judgment is entered in favor of Defendant GE CAPITAL MORTGAGE COMPANY and against the Debtor–Plaintiff, CHARLES JONES, and the co-Defendant, EDWARD SPARKMAN, ESQUIRE, TRUSTEE. Therefore, the Complaint is DISMISSED.