In re John J. CUMMINGS and Debra M. Cummings, Debtors.

THE MONEY STORE INVESTMENT CORP., Appellant,

v.

John J. CUMMINGS and Debra M. Cummings, Appellees.

Civil Action No. 97–963.

Bankruptcy No. 96–22768(RG).

United States District Court, D. New Jersey.

Sept. 12, 1997.

Bernard Schenkler, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, Roseland, NJ, for appellant.

Joanne Sorrentino, Flanders, NJ, for appellees.

## *OPINION*

WOLIN, District Judge.

Before this Court is an appeal by creditor-appellant, The Money Store Investment Corporation ("MSIC") of an Opinion and Order of United States Bankruptcy Judge Rosemary Gambardella. *In re Cummings,* No. 96–22768 (Bankr.D.N.J. Dec. 13, 1996) (taped on December 13, 1996). The bankruptcy court held that the debtors, John J. and Debra M. Cummings (the "Debtors" or the

"Cummingses"), could bifurcate the MSIC's residential mortgage into secured and unsecured portions for treatment under a Chapter 13 plan, in accordance with 11 U.S.C. § 506(a) and 11 U.S.C. § 1322(b)(2). For the reasons set forth below, the bankruptcy court's decision will be affirmed.

## BACKGROUND

On July 31, 1995, MSIC made a loan to Softflow Distributing, Inc. ("Softflow") in the sum of $97,000. John Cummings was the sole stockholder of Softflow. The loan was secured by Softflow's machinery, equipment, inventory, accounts and assignment of the corporate leasehold. The loan was also secured by an assignment of a life insurance policy on John J. Cummings and a second mortgage on the principal residence of the Cummingses. The language of the mortgage document granted to the mortgagee, the property:

> Together with and including all buildings, all fixtures including but not limited to all plumbing, heating, lighting, ventilating, refrigeration, incineration, air conditioning apparatus, ... all improvements, rents, issues, and profits....

(Def. Brief at 8.)

On April 4, 1996, the Debtors filed for protection under Chapter 7 of the United States Bankruptcy Code. Subsequently, their case was converted to a Chapter 13 action.

On November 1, 1996, the Debtors filed a motion seeking to bifurcate MSIC's claim. As a part of the motion, the Debtors asserted that the fair value of the residential real property was $165,000 and that the payoff on the first mortgage was $142,565.80. MSIC filed a proof of claim asserting an amount due on its mortgage of $103,010.68.

At a hearing before Judge Gambardella on December 2, 1996, the parties stipulated that the fair market value of the Debtor's residential real property was $165,000. *See In re Cummings*, No. 96–22768 at 4. The Debtors proposed a Chapter 13 Plan (the "Plan") which would "strip down" or bifurcate MSIC's claim into secured and unsecured claims; MSIC's mortgage lien would be limited to the secured portion which was $22,435

(the difference between the amount owed to the first mortgagee and the value of the real estate). The Plan provided that the Debtors would pay MSIC two percent of its unsecured claim and the entirety of the secured portion at eight percent interest over time together with the payment of arrears. *See id.*

On December 13, 1996, the bankruptcy court found that a mortgagee who has an additional security interest in property, other than real estate which is the mortgagor's primary residence, could not claim any benefit from section 1322(b)(2)'s anti-modification provision. *See id.* at 5. Thus, the bankruptcy court approved the Debtors' motion to bifurcate MSIC's claim and modify MSIC's rights.

## DISCUSSION

### A. Standard of Review

Pursuant to 28 U.S.C. § 158(a), it is within the district court's jurisdiction to hear an appeal from a final judgment, order, or decree of a bankruptcy judge.

When reviewing a judgment of the bankruptcy court, the Court may only disturb factual findings that are clearly erroneous. *See* Bankr.R. 8013; *In re Siciliano*, 13 F.3d 748, 750 (3d Cir.1994). The Court is not empowered to substitute the bankruptcy court's factual determinations to obtain what the Court regards as a more desirable result. *See Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 104 (3d Cir.1981). As to legal issues, the scope of review is plenary. *See id.* at 103. Because the parties do not dispute any of the factual findings, the Court's review is limited to a legal issue— whether a debtor in a Chapter 13 bankruptcy proceeding may modify the rights of a lender under 11 U.S.C. § 1322(b)(2) and 11 U.S.C. § 506(a) where a lender has security interest in property in addition to the debtor's principal residence.

### B. Modification of MSIC's Lien

 Chapter 13 of the Bankruptcy Code permits debtors to structure repayment of their indebtedness through a plan approved by the bankruptcy court. The issues

before this Court concern the interaction of two sections of the Bankruptcy Code, §§ 506(a) and 1322(b)(2). Section 506(a) allows debtors to modify creditors' claims into secured and unsecured portions. *See* 11 U.S.C. § 506(a),[1] Any claim beyond the value of the property on which the lien is fixed is unsecured. *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 239, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989). Section 1322(b)(2), however, limits a debtor's ability to use section 506(a) to modify certain mortgages.[2] This provision disallows modification of the rights of creditors secured only by a mortgage on the debtor's principal residence.

The Debtors contend that because the Debtors provided collateral in addition to the principal residence, the loan falls outside the anti-modification provisions outlined in section 1322(b)(2). MSIC counters that because its only lien on the Debtors' personal property was the residential mortgage, the mortgage should be protected by section 1322(b)(2). MSIC reasons that section 1322(b)(2) is restricted to secured collateral, defining secured collateral as collateral in which the debtor's estate has an interest, and that neither the corporate collateral nor the assigned life insurance were part of the Debtors' individual estate.

The Court finds that MSIC's mortgage is not protected by section 1322(b)(2) and can be bifurcated because the mortgage is secured by the Debtors' principal residence as well as two types of additional collateral. First, the mortgage is secured by the Debtors' personal property: (1) principal property together with fixtures (including plumbing, heating, lighting, ventilating, refrigeration, air conditioning apparatus) and all improvements, rents, issues, and profits; (2) assignment of John Cummings' life insurance poli-

cy. Second, the mortgage is secured by assets of a corporation controlled by the Debtors.

Section 1322(b)(2) does not distinguish between the personal property of the debtor and the property of a third party. Thus, any additional collateral is sufficient to take MSIC's mortgage outside the ambit of the anti-modification protection of section 1322(b)(2).

### 1. MSIC's Loan is Secured by the Debtor's Personal Property

■ It is well settled in this circuit that a mortgagee who has a security interest in property in addition to the mortgagor's primary residence is not protected by section 1322(b)(2). *See In re Johns,* 37 F.3d 1021, 1023 (3d Cir.1994) (finding that mortgage could be bifurcated where mortgage covered principal residence as well as "any and all appliances, machinery, furniture, equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed on the premises"); *In re Hammond,* 27 F.3d 52, 56 (3d Cir.1994) (holding that security interest in appliances, machinery, furniture, equipment, whether fixtures or not, in addition to a lien on the debtor's principal residence could be bifurcated into secured and unsecured claims); *Sapos v. Provident Inst. of Savings,* 967 F.2d 918, 925 (3d Cir.1992) (directing that creditor who takes an interest in personalty in addition to realty is outside the protection of section 1322(b)(2)); *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123, 128 (3d Cir.1990) (determining that creditor whose interest was secured by appliances, machinery, furniture and equipment in addition to the real property was not protected by section 1322(b)(2)).[3]

---

1. Section 506(a) defines allowed secured and allowed unsecured claims as follows:

 An allowed secured claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount allowed in such claim.

 11 U.S.C. § 506(a).

2. Pursuant to § 1322(b)(2), a Chapter 13 plan may:

 modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

 11 U.S.C. § 1322(b)(2).

3. This Court is aware of the effect of *Nobelman v. American Sav. Bank,* 508 U.S. 324, 113 S.Ct.

The personal property MSIC required the Debtors to pledge included fixtures in the Debtors' residence, as well as improvements, rents, issues and profits. In *Hammond* and *Wilson*, the Third Circuit specifically rejected the creditor's contention that its security interest in fixtures did not prevent it from taking advantage of the anti-modification provision. *See Hammond*, 27 F.3d at 57–58; *Wilson*, 895 F.2d at 129. Therefore, MSIC's security interest in fixtures makes section 1322(b)(2) inapplicable.

The Third Circuit has also determined that rents, issues, and profits are patently items of independent value. *See Sapos*, 967 F.2d at 924–25; *see also In re Pinto*, 191 B.R. 610, 614 (Bankr.D.N.J.1996) (concluding that a security interest in rents, profits, issues, fixtures, and an escrow account did not preclude modification under section 1322(b)(2)); *In re Tallo*, 168 B.R. 573, 574 (Bankr. M.D.Pa.1994) (finding that a security interest in rents, issues, and profits takes the mortgage beyond the protection of section 1322(b)(2)'s anti-modification clause). The Third Circuit underscored that it is irrelevant whether the mortgagee actually took the additional security interest in the property, that the property lacked value, or that the mortgagee lacked the subjective intent to actually obtain an interest in the additional collateral. *See Pinto*, 191 B.R. at 613 (citing

*Wilson* 895 F.2d at 129). Consequently, MSIC's security interest in improvements, rents, issues, and profits makes section 1322(b)(2) inapplicable.

MSIC argues that this Court should not be guided by *Johns, Hammond, Sapos,* and *Wilson* because the additional collateral at issue in these cases was the debtor's personal property rather than property of a third party or corporate assets. MSIC claims that because none of its additional security is property of the estate of the Debtors, the Third Circuit case law cited above should not apply. MSIC argues that pursuant to section 506(a) and *First Fidelity Bank v. McAteer,* 985 F.2d 114 (3d Cir.1993), the only property of the debtor's estate that secures MSIC's mortgage is the debtor's principal residence and, therefore, the debtors should not be permitted to bifurcate the mortgage.[4]

Given the explicit language of section 1322(b)(2), the Court is unpersuaded by the creditor's creative argument that section 506(a) and *McAteer* apply to this case. Section 506(a) simply can not be used to limit the scope of modification under section 1322(b)(2) to secured collateral of the debtor, that is, collateral in which the debtor estate has an interest. Furthermore, this Court declines to be guided by *McAteer.* As the Bankruptcy Court observed, *McAteer* dealt with property of the estate and the effect of a

2106, 124 L.Ed.2d 228 (1993) on *Wilson* and *Sapos.* As the Third Circuit concluded in *Hammond, Nobelman* overruled only one of the two rationales underlying the Third Circuit's decisions in *Wilson* and *Sapos.* 27 F.3d at 53. *Nobelman* did not overrule the *Wilson* and *Sapos* rationale that a mortgagee who holds additional collateral cannot be protected by § 1322(b)(2). *See id.* In *Nobelman,* the deed of trust securing the debtor's premises also provided a security interest in "an undivided .67% interest in the common areas of the condominium complex, escrow funds, proceeds of hazard insurance, and rents." *See Nobelman v. American Sav. Bank,* 129 B.R. 98, 99 (N.D.Tex.1991), *aff'd,* 968 F.2d 483 (5th Cir.1992), *aff'd,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). While the Supreme Court held that § 1322(b)(2) prohibits a Chapter 13 debtor from relying on § 506(a) to "strip down" a mortgagee's lien to the value of the mortgaged premises that is the debtor's principal residence, the Supreme Court never specifically addressed the issue of "additional collateral." *See Nobelman* 508 U.S. at 325–26, 113 S.Ct. at 2108–09. As the *Hammond* court acknowl-

edged, the Supreme Court's failure to address the effect of the additional security interest in the *Nobelman* mortgage does not imply that the Supreme Court held § 1322(b)(2) prohibits bifurcation of residential mortgages that also give the mortgagee a lien on personal property used in or about the residence. 27 F.3d at 57.

4. At issue in *McAteer* was whether proceeds of a credit life insurance policy were the property of the estate of a bankrupt debtor that owned the policy or the property of the creditor beneficiary of the policy. *See McAteer* 985 F.2d at 116. The Third Circuit held that the debtor owned the credit life insurance policy but the bank was the primary beneficiary; thus, the bank's interest in the proceeds of the life insurance policy was not the property of the estate. *See id.* at 118. Therefore, the Third Circuit held that because the bank's interest could not be altered, confirming the plan of reorganization did not erase or alter the bank's right, as a third party beneficiary, to collect from the insurance company. *See id.* at 118–19.

discharge under 11 U.S.C. § 524(e) and, therefore, is inapplicable to this case.

### 2. MSIC's Loan is Secured by Assets of a Corporation Controlled by the Debtors

■ Section 1322(b)(2) does not state or even imply that to permit modification, the additional security must be given only by the debtors. Section 1322(b)(2) allows modification, regardless of whether the additional collateral is personal property of the debtor. Indeed, to require that the additional property be the debtor's personal property would be contrary to Congressional intent in creating the exception, *i.e.*, to protect home lenders and thereby encourage the residential home mortgage industry. Thus, section 1322(b)(2) does not sanction the result that a loan secured by the debtor's personal residence and property of a third party—corporate collateral in part—will be protected from modification.

While, as MSIC points out, the issue of additional collateral which is a combination of a debtor's personal property and corporate assets may be novel for this Court, a Rhode Island bankruptcy court confronted with this issue found that a Chapter 13 plan could modify the rights of a secured creditor where the mortgage was secured not only by the debtor's personal residence, but also by collateral pledged as security by corporation controlled by the debtors. *See In re Bouvier*, 160 B.R. 24, 25 (Bankr.D.R.I.1993). The *Bouvier* court emphatically refused to differentiate between the debtor's personal assets and those of a third party. *See id.*

The Court is mindful that bankruptcy as well as district courts have struggled to determine whether the attempted inclusion of a particular asset is sufficient to deny a lender the protection of the anti-modification provisions of section 1322(b)(2). *See generally In re French*, 174 B.R. 1, 4 (Bankr.D.Mass. 1994). While the test appears to be that the inclusion of additional collateral which is nothing more than a component part of the real property or is of little or no independent value does not affect the anti-modification provisions of section 1322(b)(2), courts must grapple with the terms "real property" and "independent value." *See id.* at 5–6. In the instant case, however, this Court need not define these terms given the combination of personal property and corporate assets. Having listed both personal property and corporate assets as additional collateral, MSIC has a secured interest in that collateral. The Court finds, therefore, that MSIC's claim is not one "secured only by a security interest in real property that is the debtor's principal residence," and section 1322's anti-modification provision does not apply. Therefore, MSIC's rights in the unsecured portion of its claim may be modified as provided by section 506.

■ As the Third Circuit has maintained, a mortgagee that wants to take advantage of the anti-modification provision of section 1322(b)(2) "must limit its lien to the real estate." *Hammond*, 27 F.3d at 57; *see also Johns*, 37 F.3d at 1024; *Tallo*, 168 B.R. at 574 (maintaining that a creditor's recourse, if it wishes "to avoid modification, is to forgo the additional security"). Such an interpretation of section 1322(b)(2) is consistent with Third Circuit precedent as well as congressional intent to protect the home-lending industry. *See Grubbs v. Houston First American Sav. Ass'n*, 730 F.2d 236, 245–46 (5th Cir.1984) (canvassing legislative history of Chapter 13 home mortgage provisions). Accordingly, the bankruptcy court properly concluded that the debtors' could modify MSIC's rights and bifurcate its claim under section 506(a) into secured and unsecured portions.

## CONCLUSION

For the reasons stated above, this Court will affirm the decision of the bankruptcy court.