**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1872
_____

In re: J & J PIZZA, INC,
                                        Debtor


STEVEN D'AGOSTINO,
                                        Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3:21-cv-13729)
District Judge: Honorable Peter G. Sheridan
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 6, 2024

Before: JORDAN, PHIPPS, and NYGAARD, <u>Circuit Judges</u>

(Opinion filed: July 25, 2024)
_____

OPINION[*]
_____

PER CURIAM

Steven D'Agostino appeals pro se from the District Court's decision affirming

orders of the United States Bankruptcy Court for the District of New Jersey that had

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

confirmed a reorganization plan under Chapter 11 of the Bankruptcy Code for debtor

J & J Pizza, Inc ("J & J"). For the following reasons, we will affirm in part, vacate in

part, and remand for further proceedings.

I.

D'Agostino was an employee of J & J, which operates a Domino's Pizza franchise

in New Jersey. He filed an employment-discrimination suit in state court against J & J

and other related parties, which the defendants then removed to the U.S. District Court

for the District of New Jersey; that suit remains pending. See D'Agostino v. Domino's

Pizza, D.N.J. Civ. No. 3:17-cv-11603. Over three years after D'Agostino filed that suit,

J & J entered Chapter 11 bankruptcy proceedings. See In re: J & J Pizza, Inc., Bankr.

D.N.J. No. 20-23856. In the resulting reorganization plan, D'Agostino was scheduled as a

general unsecured creditor with a contingent, unliquidated, disputed claim, based on his

pending lawsuit against J & J. See id. at Dkt. Nos. 23 & 81. For the purposes of

calculating disbursements to the class of unsecured creditors, D'Agostino's proof of

claim estimated a possible future judgment against J & J in his favor for $1 million.

In the Bankruptcy Court, D'Agostino filed numerous objections to his

classification, to the stay of his employment-discrimination action,[1] and to the fairness of

the proposed reorganization plan. After hearings on confirmation of the plan and on

D'Agostino's motion for reconsideration, see id. at Dkt. Nos. 145 & 146, the Bankruptcy

---

[1] That suit was stayed by the District Court pending the Chapter 11 proceedings. See
D'Agostino v. Domino's Pizza, D.N.J. Civ. No. 3:17-cv-11603, at Dkt. Nos. 89–99.

Court approved the plan with specific provisions for D'Agostino's recovery of any future damages award, see id. at Dkt. No. 115.

D'Agostino appealed the Bankruptcy Court's confirmation of the plan to the District Court. After briefing, the District Court held oral argument. See generally Hr'g Tr., ECF No. 18. D'Agostino later filed a request for "clarification" of representations made at oral argument by J & J's counsel; the District Court denied the request because "[t]here was ample opportunity at oral argument to address these issues." ECF No. 10 at 1 (handwritten ruling). The District Court then denied D'Agostino's appeal and affirmed the Bankruptcy Court's judgment in an order and memorandum opinion. D'Agostino timely appeals.[2]

## II.

The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157 and 1334(b), the District Court had appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1), and we now have appellate jurisdiction under 28 U.S.C. §§ 158(d)(1) and 1291. We exercise plenary review of a District Court sitting in review of a Bankruptcy Court. See In re W.R. Grace & Co., 729 F.3d 311, 319 n.14 (3d Cir. 2013). "Because the District Court sat as an appellate court to review the Bankruptcy Court, we review the [latter's] legal determinations de novo, its factual findings for clear error, and its exercises of discretion for abuse thereof." In re Trib. Co., 972 F.3d 228, 237 (3d Cir. 2020) (quoting In re

---

[2] This matter was submitted on the Appellant's brief only.

Goody's Family Clothing Inc., 610 F.3d 812, 816 (3d Cir. 2010) (alteration in original)).

We construe D'Agostino's pro se filings liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

III.

Chapter 11 of the Bankruptcy Code establishes a list of requirements that a debtor's reorganization plan must meet in order to be approved. See 11 U.S.C. § 1129(a). However, the Code also contains a "cramdown" provision, under which a plan may be approved without meeting the requirement "that all classes either vote to accept the plan or recover their debt in full under it," as long as the plan satisfies the other statutory provisions, is fair and equitable towards creditors in preserving their relative priority, and does not unfairly discriminate among similarly situated creditors. In re Trib. Co., 972 F.3d at 237 (citing, inter alia, 11 U.S.C. § 1129(b)(1)).

Here, the Bankruptcy Court approved J & J's reorganization plan under the cramdown provision. As noted above, D'Agostino's claim was at the time of the plan (and remains) for an undetermined amount, because his employment-discrimination suit is ongoing. His claim was therefore estimated at $1 million based on the proof of claim he submitted, and was considered unsecured, contingent, unliquidated, and disputed. This was a proper exercise of the Bankruptcy Court's discretion. See 11 U.S.C. § 502(c). Under the confirmed plan, D'Agostino was included in a single class with all other unsecured creditors scheduled to share in a single base dividend on a pro-rata basis relative to the size of their claims. To the extent that he argues that his inclusion in that

4

class was erroneous, see Appellant Br. 20–21, he is mistaken, see 11 U.S.C. § 1122; In re Curtis Ctr. Ltd. P'ship, 195 B.R. 631, 642 (Bankr. E.D. Pa. 1996) ("Unsecured claims are basically all alike, whether they are disputed or not." (citation omitted)). So, we will affirm the District Court's rejection of D'Agostino's argument that his claim should not have been included in the plan.

The Bankruptcy Court's order confirming the plan and granting D'Agostino's motion for reconsideration in part contained specific provisions about his ability to recover a future damages award from his employment-discrimination suit. See Order, In re: J & J Pizza, Inc., Bankr. D.N.J. No. 20-23856, Dkt. No. 115. First, that suit was allowed to proceed for the purposes of determining liability, although any collection activity would remain subject to the automatic stay. Second, no disbursement could be made to the other creditors in D'Agostino's class unless his pro-rata share (based on the $1 million estimation) was preserved in escrow. Third, if there was no judgment fixing the amount of his claim before disbursements to the other creditors in his class began, interest on the escrow account would accrue at a fixed rate and be held separately and paid to D'Agostino later. Finally, if J & J was held liable for an amount greater than the estimated $1 million, D'Agostino's claim would still be capped for the purposes of distribution from the bankruptcy estate at that estimated pro-rata share.

Although D'Agostino has raised concerns with these provisions, those concerns are largely unfounded. He believes that the stay of his collection activity will remain in place until March 2026. He misunderstands the language of the Bankruptcy Court's

5

order. When a debtor files a Chapter 11 petition, an automatic stay is placed on any action seeking to recover money from that debtor, pending resolution of the Chapter 11 proceeding. See 11 U.S.C. § 362(a)(1). Here, the Bankruptcy court's order lifted that automatic stay for the limited purpose of allowing D'Agostino to pursue his employment-discrimination suit, while leaving it in place only as to any collection activity. Although he believes this will continue to impair his collection until the plan's conclusion in March 2026, an automatic stay lifts at the earliest of: the time the case is closed; the time the case is dismissed; or the time a discharge of the debtor's obligations is granted or denied. See § 362(c). Here, the Bankruptcy Court issued a notice of intent to close the case, followed by a final decree. See In re: J & J Pizza, Inc., Bankr. D.N.J. No. 20-23856, Dkt. Nos. 155 & 157. Thus, the automatic stay is no longer in effect, and, assuming D'Agostino receives a judgment in his favor in his employment-discrimination suit, it appears that nothing in the Bankruptcy Court's order will prevent him from collecting his escrowed pro rata share. Debtor's counsel made the same representation to the District Court. See Hr'g Tr. 29:20–25, ECF No. 18.

D'Agostino is also concerned about his ability to recover any judgment against J & J from its general commercial liability insurance policy. Although the plan capped what the bankruptcy estate may disburse to D'Agostino at his pro rata share of the base dividend for unsecured creditors, confirmation of the plan and eventual discharge of J & J's debt does not enjoin or otherwise restrict D'Agostino from proceeding against J & J to establish its liability for the purposes of collecting from its insurer. See 11 U.S.C.

6

§ 524(e) (providing that, with exceptions inapplicable here, "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt"); see also In re Jet Fla. Sys., Inc., 883 F.2d 970, 976 (11th Cir. 1989) (explaining that, "pursuant to section 524(e), a plaintiff may proceed against the debtor simply in order to establish liability as a prerequisite to recover from another, an insurer, who may be liable"); accord First Fid. Bank v. McAteer, 985 F.2d 114, 118 (3d Cir. 1993). Again, debtor's counsel made this representation to the District Court. See Hr'g Tr. 23:18–23, 30:9–16, ECF No. 18. So, we will affirm the District Court's rejection of D'Agostino's challenges to the Bankruptcy Court's order as to the effect of the automatic stay and his ability to proceed against J & J in service of collecting from any insurance policy.

Nonetheless, we cannot affirm in all respects. D'Agostino's appeal raises material issues with respect to the confirmation of the plan overall. First, D'Agostino has argued throughout that the confirmed plan contains mathematical errors. Our review prompts similar concerns. In particular, the total amount listed in the confirmed plan for general unsecured claims (exclusive of D'Agostino's estimated $1 million claim) appears to exceed the individual amounts listed for those general unsecured claims, including those claims scheduled as secured but stripped off based on priority and treated as unsecured under the plan. Compare Third Am. Plan of Reorg., In re: J & J Pizza, Inc., Bankr. D.N.J. No. 20-23856, Dkt. No. 81 at 7 (listing total general unsecured claims at $743,533.05), with id. at 8–9, 14–17 (listing individual claims appearing to total $49,620 in secured

7

claims and $720,844.54 in general unsecured claims). If the total amount of general unsecured claims listed is erroneously inflated relative to the actual sum, that would negatively impact D'Agostino's pro rata share of the base dividend under the plan.

Second, D'Agostino has continuously emphasized that the total base dividend to be paid to the class of unsecured creditors was substantially reduced between the original plan and all subsequent amended versions. During oral argument in the District Court, counsel for J & J explained that this reduction in the base dividend was due to a recalculation of the cash-flow analysis included in the original plan to account for repayment of a construction loan beginning in July 2021 and continuing through the life of the plan. See Hr'g Tr. 17:9–19, ECF No. 18. The confirmed plan explains that J & J's franchisor (Domino's) threatened the loss of the franchise license if J & J did not relocate, so J & J took out the construction loan to finance renovations on a new, larger space. See Third Am. Plan of Reorg., In re: J & J Pizza, Inc., Bankr. D.N.J. No. 20-23856, Dkt. No. 81 at 24. That work appears to have been ongoing at the time of the filing of the petition and confirmation of the plan, with the new space to open at the time the loan payments were to commence in July 2021.

However, based on our review of the record, at no point in the Bankruptcy Court or the District Court has J & J been required to provide justification for treating the construction loan as an operating expense subject to full repayment in the cash-flow analysis, rather than scheduling it as a liability like any other. Indeed, in the first of four monthly operating reports that J & J submitted to the Bankruptcy Court between filing its

Chapter 11 petition and the confirmation of the plan, J & J listed the construction loan on its January 2021 balance sheet along with the other long-term liabilities that ended up scheduled in the reorganization plan. See In re: J & J Pizza, Inc., Bankr. D.N.J. No. 20-23856, Dkt. No. 54-1 at 2 (listing line item "Loan Payable – CIT" for $186, 688.79). Yet the three subsequent monthly operating reports do not list the construction loan as a liability, nor do they appear to reference it in any other way. See id. at Dkt. Nos. 65-1, 76-1 & 91-1. The cash-flow analysis in the confirmed plan listed monthly payments of $3,135.67 on the construction loan beginning July 2021 and continuing through the life of the plan—payments that, in total, would nearly match the entire base dividend payable to the general unsecured creditors under the plan. See Exh. A, Third Am. Plan of Reorg., In re: J & J Pizza, Inc., Bankr. D.N.J. No. 20-23856, Dkt. No. 81-1.

Therefore, based on the current record, we cannot say that the Bankruptcy Court's mathematical calculations or its treatment of the construction loan payments in the plan are free of error. While there may be valid explanations for these issues, in the absence of such explanations, we feel constrained to vacate that part of the District Court's order and remand for further proceedings consistent with this opinion. We leave it to the District Court to determine whether a remand to the Bankruptcy Court for further factfinding is appropriate. And because we have concluded that the District Court properly rejected D'Agostino's arguments that his claim should not have been included in the reorganization plan, along with his challenge to the automatic stay and his ability to

collect under the liability insurance policy, we will affirm the District Court's judgment to that extent.