In re Albert G. STEVENS, Edelgard
Stevens, Debtors.

Albert G. STEVENS, Edelgard
Stevens, Movants,

v.

Barnee C. BAXTER, Chapter 13 Trustee
and Ford Motor Credit Company,
Respondents.

Bankruptcy No. 92–11715.

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

Sept. 22, 1995.

Vincent M. Davison, Jr., Augusta, Georgia, for debtors.

Kathleen Horne, Inglesby, Falligant, Horne, Courington & Nash, Savannah, Georgia, for Ford Motor Credit Co.

Barnee C. Baxter, Chapter 13 Trustee, Augusta, Georgia.

## ORDER

JOHN S. DALIS, Bankruptcy Judge.

By motion, the debtors seek turnover of excess funds held by the Chapter 13 trustee. This dispute arose when the insurer of the debtors' 1992 Ford F150 pickup truck paid insurance proceeds to Ford Motor Credit Company ("Ford") as lienholder of record after the truck was destroyed. This dispute concerns an alleged overpayment to Ford by the Chapter 13 trustee.

The facts of this case are not in dispute. The debtors, Albert G. Stevens and Edelgard Stevens, filed a joint petition for relief under Chapter 13 of Title 11, United States Code, on September 24, 1992. Simultaneous with the petition the debtors filed their proposed Chapter 13 plan of repayment, which did not specifically provide for Ford's claim but provides for secured claimholders generally in paragraph 2(b):

Secured creditors shall retain liens securing their claims. Creditors who file claims and whose claims are allowed as secured claims shall be paid the lesser of (1) the amount of their claim, or (2) the value of their collateral as set forth here:[1] ....

Ford filed a proof of secured claim for $18,586.72 and requested interest at the rate of twelve percent (12%) per annum.[2] The original contractual annual interest rate was 13.5%. When the case was confirmed February 22, 1993 the proof of claim was deemed allowed as filed under 11 U.S.C. § 502(a).[3] The trustee's payments to Ford under the plan on the claimed amount of $18,586.72, plus 12% annual interest, were as follows:[4]

| Date | Principal | Interest | Total |
|------|-----------|----------|-------|
| 04/07/93 | $1,572.78 | 185.87 | $1,758.65 |
| 06/16/93 | 229.62 | 162.61 | 392.23 |
| 07/08/93 | 343.79 | 160.31 | 504.10 |
| 08/13/93 | 239.88 | 156.87 | 396.75 |
| 09/09/93 | 251.33 | 154.47 | 405.80 |
| 10/07/93 | 363.43 | 151.96 | 515.39 |
| 11/05/93 | 260.54 | 148.33 | 408.87 |
| 12/10/93 | 276.20 | 145.72 | 421.92 |
| 01/07/94 | 384.43 | 142.96 | 527.39 |
| 02/09/94 | 282.79 | 139.12 | 421.91 |
| 03/14/94 | 285.62 | 136.29 | 421.91 |
| 04/12/94 | 393.96 | 133.43 | 527.39 |
| 05/05/94 | 292.42 | 129.49 | 421.91 |
| 06/09/94 | 295.34 | 126.57 | 421.91 |
| total | $5,472.13 | 2,074.00 | $7,546.13 |

The truck was destroyed in a collision, after which the insurer requested from Ford the payoff amount on its outstanding debt. Ford

1. No value was set forth in the plan on Ford's collateral, the truck in question.

2. The trustee's brief erroneously asserts that Ford did not request a specific interest rate in the proof of claim yet elsewhere the brief states that the interest rate is derived from the Local Bankruptcy Rule 408 which provides:

   INTEREST ON CLAIMS IN CHAPTER 13 CASES
   Without in any way limiting or amending any provision of the Code or Rules that govern the filing of proofs of claim, all claims filed in this Court shall be filed for the **net principal balance** only as of the date of the debtor's filing of his or her case.
   Unless otherwise ordered by the Bankruptcy Judge, the Chapter 13 Trustee is directed to pay interest at a rate of 12% per annum on all allowed secured claims and is further directed to file objections to or notify debtor's counsel with respect to any claim which is not filed in accordance with the terms of this order.

   The sanction provisions of Bankruptcy Rule 9011 apply to claims filed in violation of applicable provisions of the Bankruptcy Code and Rules.

3. 11 U.S.C. § 502(a) provides in pertinent part:
   A claim or interest, proof of which is filed under section 501 of this title [11], is deemed allowed, unless a party in interest, ... objects.

4. This payment history from Ford's brief does not reflect a payment of $923.30 made by the trustee's office to Ford which was subsequently returned by Ford to the trustee. At hearing the parties stipulated that the status of this payment was no longer at issue. Nevertheless, both parties allege a different figure as being "at issue." Ford claims the overpayment, if any, is in the amount of $1,852.83, while the debtors and the trustee claim an overpayment of $2,605.99. It appears the difference results from the trustee's failure to post the $923.30 rebate from Ford because the sums differ by the principal portion of that payment ($753.16).

calculated the payoff amount using the 13.5% annual interest rate specified in the original contract, rather than the 12% interest rate confirmed under the plan. The insurance payoff to Ford totaled $14,967.42. The alleged overpayment by the trustee is therefore calculated as follows (giving effect to the rebate of $923.30 (see n. 4)):

| | |
|---|---|
| amount of allowed secured claim | $ 18,586.72 |
| less: insurance proceeds | (14,967.42) |
| principal payments by trustee | (5,472.13) |
| overpayment | $ (1,852.83). |

■ The trustee maintains that under the terms of the confirmed plan Ford is entitled to receive only the balance of its secured claim plus 12% annual interest, and that payments to Ford in excess of this amount should be returned to the trustee for distribution to other creditors. The debtors urge the same restriction on Ford's recovery but request that the excess funds be turned over to the debtors, not the trustee or other creditors. Ford admits that it is prohibited from seeking more than 12% interest from the debtors, but maintains that this restriction does not apply where payment is made by a third party insurer.

■ Ford is bound to the terms of the confirmed plan, is entitled to be paid only 12% per annum interest on its claim, and payments in excess of Ford's secured claim plus appropriate interest to the extent paid from bankruptcy estate assets are recoverable by the trustee for administration under the confirmed plan.

Under the clear terms of the debtors' plan, Ford was to be paid the amount of its filed and allowed claim. Ford filed a proof of claim for $18,536.72 together with future interest at 12% per annum. No one objected to the proof of claim. It is beyond dispute that Ford could not receive payment under the plan in excess of the amount of its filed claim. Ford's position that it is entitled to recover from any person outside the bankruptcy proceeding on its secured claim in an amount greater than that provided by the confirmed plan ignores the res judicata effect of Bankruptcy Code § 1327, the claims allowance process under §§ 501 and 502 and the simple fact that given credit for the insurance payment, *the trustee* has overpaid Ford on its allowed claim from estate assets.

■ Under 11 U.S.C. § 1327,[5] the order of confirmation has res judicata effect on all issues which were or could have been adjudicated at the confirmation hearing. *Anaheim Savings & Loan Ass'n v. Evans (In re Evans),* 30 B.R. 530 (9th Cir.BAP 1983); *In re Bereolos,* 126 B.R. 313 (Bankr.N.D.Ind.1990); *In re Ross,* 162 B.R. 785 (Bankr.N.D.Ill. 1993); *Bank of Alex Brown v. Goldberg (In re Goldberg),* 158 B.R. 188 (Bankr.E.D.Cal. 1993), *aff'd,* 168 B.R. 382 (9th Cir.BAP 1994); *Kuebler v. Commissioner (In re Kuebler),* 156 B.R. 1012 (Bankr.E.D.Ark.1993), *aff'd,* 172 B.R. 595 (E.D.Ark.1994); *In re Algee,* 142 B.R. 576 (Bankr.D.D.C.1992); *In re Fox,* 142 B.R. 206 (Bankr.S.D.Ohio 1992). Thus § 1327(a) binds the parties to the plan and §§ 1327(b) and (c) revest the truck subject to Ford's lien in the debtors. Ford is limited in its recovery under the plan to the amount of its secured claim as confirmed by the plan. *In re Tucker,* 35 B.R. 35 (Bankr.M.D.Tenn. 1983) (under similar facts, the res judicata effect of confirmation prevents a secured creditor from collecting more than the remaining balance of its secured claim from insurance proceeds of destroyed collateral). *See also McCauley v. Chrysler Credit Corp. (In re McCauley),* 173 B.R. 453 (Bankr. M.D.Ga.1994); *In re Suter,* 181 B.R. 116 (Bankr.N.D.Ala.1994); *In re Arkell,* 165 B.R. 432 (Bankr.M.D.Tenn.1994) (car financier's interest in insurance proceeds of destroyed collateral was defined and limited by confirmed plan to balance of its allowed secured claim); *In re Pourtless,* 93 B.R. 23 (Bankr.

---

**5.** 11 U.S.C. § 1327 states:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

W.D.N.Y.1988) (secured creditor's rights in the collateral are extinguished on payment of its claims provided for in the confirmed plan).

Reliance by Ford on the opinion of the Honorable Lamar W. Davis, Jr., Chief Bankruptcy Judge of this District, in *Norman Pontiac Buick GMC, Inc. v. Brown (In re Steverson)*, Ch. 13 Case No. 92–20609, slip op. (Bankr.S.D.Ga. Davis, C.J. April 8, 1994) does not require a different result. In *Steverson*, the car financier's lien on the vehicle was avoided by the trustee, leaving the creditor with only an unsecured claim in the amount of $8,200.00. On destruction of the vehicle, the now-unsecured creditor sought turnover to it of the $7,250.00 paid by the insurer. Chief Judge Davis held that under Georgia law, because the creditor was named as loss payee under the insurance policy, the creditor was entitled to the insurance proceeds up to the amount of the outstanding indebtedness, notwithstanding that the creditor held no security interest in the insured property. I agree with Judge Davis' analysis, and acknowledge the cases are similar in this respect: the insurance proceeds in *Steverson* and here are not property of bankruptcy estate. What distinguishes *Steverson* from this case is the action of the trustee. In *Steverson* the trustee sought to retain the insurance proceeds. In this case, the trustee seeks to recover overpayments made by the trustee to the creditor, *i.e.* estate property. Under State law Ford is entitled to the insurance proceeds to the extent of its debt as calculated under State law, but under the Bankruptcy Code Ford is entitled to the amount of its allowed claim together with future interest of 12% from the estate assets. To the extent that the Chapter 13 trustee has overpaid Ford, taking into consideration the insurance proceeds paid to Ford, the trustee is entitled to recover the estate property to the extent of payments made by the trustee to Ford. Similarly, in *First Fidelity Bank v. McAteer*, 985 F.2d 114 (3rd Cir. 1993), also relied upon by Ford, the debtor in that case sought recovery of insurance proceeds paid to the creditor under a credit life insurance policy upon the death of the co-debtor. I do not dispute the findings in *McAteer* wherein proceeds of a credit life insurance policy were determined property of the creditor beneficiary of the policy and not property of the bankruptcy estate of a debtor who owned the policy at the time of the bankruptcy filing. What was not addressed in *McAteer* was the extent, if any, of payments made by the Chapter 13 trustee on the allowed secured claim prior to payment under the policy of insurance to the creditor. Again, as in *Steverson*, the remedy sought in *McAteer* distinguishes that case from this analysis.

■ Ford also disputes the propriety of the trustee's method of recovery. Ford maintains that the trustee may not, on discovering an overpayment to Ford on one account, setoff that overpayment against later payments made by the trustee to Ford on behalf of other unrelated debtors. According to Ford, this procedure leaves the later debtors in default because only partial payment is received on their accounts. Ford is incorrect. Withholding payment from an overpaid creditor as a means to recover estate property paid out by the trustee is properly within the exercise of a Chapter 13 trustee's fiduciary duty to the estate.

■ A Chapter 13 trustee stands in a fiduciary capacity to the estate and creditors of the estate. *See Andrews v. Loheit (In re Andrews)*, 155 B.R. 769 (9th Cir.BAP 1993), *aff'd*, 49 F.3d 1404 (9th Cir.1995); *In re Jernigan*, 130 B.R. 879 (Bankr.N.D.Okla. 1991). In order to carry out the attendant duties of the position, the trustee is granted certain rights and powers by the Bankruptcy Code. *See* 11 U.S.C. § 1302; § 704. Additional rights and duties have been defined for bankruptcy trustees by the courts. *E.g., In re KTMA Acquisition Corp.*, 153 B.R. 238, 260 n. 21 (Bankr.D.Minn.1993) (Chapter 11 trustee has duty to oppose motion for relief from stay when unmerited); *In re Peoples Sav. & Inv., Inc.*, 103 B.R. 264, 273–74 (Bankr.E.D.Okla.1989) (Chapter 7 trustee has duty to review performance of professionals retained by estate and report to court); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr.N.D.Ill.1990) (Chapter 7 trustee has affirmative duty to investigate for unscheduled executory contracts). The Chapter 13 trustee's power to recover overpayment is

inherent in the overall scheme of a trustee's fiduciary duties as a necessary means to ensure that the trustee's payment system functions smoothly.

■ The authority supporting a Chapter 13 trustee's power to withhold on account of an overpayment is apparent in the overall scheme of bankruptcy administration. An overpayment to any creditor by a Chapter 13 trustee is property of the estate under 11 U.S.C. § 1306(a).[6] A Chapter 13 trustee has the right and duty to recover property of the estate held by a creditor. *See* 11 U.S.C. § 1302(b)(1) (through § 704(2), trustee is accountable for property received); 11 U.S.C. § 502(j) (does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor); 11 U.S.C. § 1302(b)(4) (trustee shall assist debtor in performance of plan). The overpaid creditor cannot complain about a recovery effectuating repayment of improperly paid funds. *In re Guild Music Corp.*, 163 B.R. 17, 18 (Bankr.D.R.I.1994) (the attempt to collect overpayments is not prejudicial to creditors who received monies to which they were not entitled under the confirmed plan).

Ford's contentions that other debtors are thrust into default by the trustee's withholding of payment is simply wrong. All that is required of Ford is a bookkeeping entry reflecting a deduction from the overpaid account and the corresponding addition to the other affected accounts. If the trustee were not permitted to recover overpayments against later payments to the same creditor the trustee would be left in the position of continuing full payments to an overpaid creditor while simultaneously pursuing an action for reimbursement against that same creditor. Something the trustee is not required to do.

The trustee's power to withhold payment is not derived from any right to "setoff" as that term is generally understood, and as incorporated into the Bankruptcy Code in § 553(a).[7] Such a right is afforded creditors, not trustees. *Balaber–Strauss v. GTE Supply (In re Coin Phones, Inc.)*, 153 B.R. 135, 143 (Bankr.S.D.N.Y.1993) (Chapter 7 case). Furthermore, the Chapter 13 trustee's power to withhold payment from an overpaid creditor does not emanate from 11 U.S.C. § 542(a).[8] I am not deciding that a trustee may ignore § 542(a) and the formal procedural requirements of a turnover action when marshaling the assets of a bankruptcy estate. *See* Fed.R.Bankr.P. 7001(1).[9] Rather, I recognize the right of a Chapter 13 trustee to recover an overpayment by withholding further payment to an overpaid creditor in the limited case where claims are already legally and formally defined, and after the Chapter 13 case is confirmed.

6. § 1306 states in relevant part:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title [11]—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title [11], whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

7. 11 U.S.C. § 553 states in relevant part:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title [11], this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case,....

8. 11 U.S.C. § 542(a) states:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

9. Rule 7001(1) states in relevant part:

An adversary proceeding is governed by the rules of this Part VII. It is a proceeding (1) to recover money or property....

■ Subject to the above limitation, having determined that the recovered funds to the extent of $1,852.83 are estate property subject to plan administration IT IS HEREBY ORDERED that the debtors' motion for turnover is denied.