**In re Carmen MOTTO, Jr., Barbara Motto, Debtors.**

**No. 00–63975.**

United States Bankruptcy Court,
N.D. New York.

April 12, 2001.

Wayne R. Bodow, Syracuse, for Debtors.

Mark W. Swimelar, Syracuse, for Chapter 13 Trustee.

Anthony J. D'Elia, Hinman, Howard & Kattell, LLP, Syracuse, for BSB Bank & Trust Company.

### MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Currently before the Court is the October 13, 2000 objection of estate creditor

BSB Bank & Trust Company ("BSB") to the confirmation of the proposed individual debt adjustment plan filed by Debtors Carmen Motto, Jr. and Barbara J. Motto (collectively "Debtors") on August 10, 2000. BSB generally objects to the treatment of its claim under the proposed plan as fully unsecured as well as to the use of claim proceeds from a credit disability insurance policy, under which BSB is the named beneficiary, to fund the plan. On November 14, 2000, the standing Chapter 13 Trustee ("Trustee") also filed an objection to confirmation of the proposed plan asserting the estate's right to any insurance proceeds received by BSB as beneficiary under the credit disability insurance policy.

A confirmation hearing was held in Utica, New York on November 21, 2000, following the Court's regular motion term. At the confirmation hearing, the Court indicated that an evidentiary hearing was required to ascertain the fair market value of the real property originally securing the Debtors' obligation to BSB before the nature of BSB's claim could be determined. After consensual adjournment of the original hearing date, BSB stipulated to the admission of the Debtors' appraised value of the subject real property thereby vitiating the need for an evidentiary hearing on that issue. BSB filed a Memorandum of Law ("BSB Memo") on February 9, 2001, in support of its objection to confirmation. Opposition to BSB's objection was filed by the Debtors on February 16, 2001 ("Debtors' Memo"). BSB's Reply Memorandum of Law ("BSB Reply Memo") was filed on February 22, 2001. The Trustee submitted a Memorandum of Law ("Trustee's Memo") in support of his objection on March 16, 2001, and on that date the Court took the matter under submission for written decision on unanimous consent of the parties.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and the subject matter of this contested matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a), (b)(1) and (b)(2)(A), (B), (K), (L) and (O).

## FACTS

On July 19, 1991, the Debtors executed and delivered a note to Cicero Bank, BSB's penultimate predecessor in interest, in the principal sum of $23,609.78. The amount financed under the note constituted $21,450 secured by a duly perfected second mortgage on the Debtors' real property in Cicero, New York, $1,117.83 representing a one-time premium for a credit disability insurance policy covering the Debtor Carmen Motto, Jr. and $1,041.95 representing a one-time premium for a joint life insurance policy covering both Debtors. The issue currently before the Court centers around the credit disability insurance policy and the claim proceeds paid to BSB thereunder.

The relevant disability benefit clause in the credit disability insurance policy states:

> Disability Insurance Benefit: The Insurer will pay disability benefits to the Creditor if you [Debtor Carmen Motto, Jr.] become totally disabled while you are insured. Benefits will begin on the day shown in the Schedule if you have remained totally disabled for the Disability Waiting Period in the Schedule and continue to be disabled. The amount of your monthly benefit shown in the Schedule is the same as the amount of your initial monthly loan payment. It will be paid for each full month during which you are totally disabled. A daily benefit (1/30th of your monthly benefit) will be paid for total disability of less than an entire month.

The Creditor will use these payments to reduce or to pay off your loan shown in the Schedule. If any insurance remains, the balance will be paid to you if you are living; otherwise to a beneficiary named by you or to your estate.

BSB Memo, Exhibit A at 3. The maximum benefit payable by the insurer under the policy is $30,000. *See id.* at 1.

On or about December 30, 1996, Skaneateles Savings Bank, BSB's immediate predecessor in interest, filed a claim with the John Hancock Mutual Life Insurance Company ("John Hancock") against the credit disability insurance policy covering Debtor Carmen Motto, Jr. Thereafter, John Hancock began paying Skaneateles Savings Bank the monthly insurance benefit under the policy, $345.70 per month, representing the Debtors' monthly loan payment under the note. To date, BSB continues to receive the $345.70 monthly benefit under the insurance policy.

The Debtors filed a petition under Chapter 13 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code") on August 10, 2000, along with a proposed individual debt adjustment plan. Schedule D of the Debtors' petition estimates the fair market value of the Debtors' real property in Cicero, New York at $56,000, encumbered by a first mortgage in the amount of $58,884.74 and the second mortgage held by BSB with a balance of $5,550. The Debtors obligation to BSB is also listed as an unsecured, non-priority claim in the amount of $7,000 and is scheduled as "2nd Mortgage (originally w/Cicero Bank) No Security Interest due to current FMV of residence and existing 1st mortgage lien which exceeds current FMV."[1] Debtors' Chapter 13 Petition, Schedule F. The Debtors' proposed plan advises Madison National Life Insurance, the John Hancock claims processor currently paying the disability claim, to tender all future payments to the Trustee and that "BSB Bank is noticed to turn over any disability payments received. . . . to the Trustee." Debtors' proposed Chapter 13 plan, at ¶¶ 14–15.

## ARGUMENTS

BSB contends that the subject insurance proceeds are not property of the Debtors' Chapter 13 estate and are, thus, not subject to plan distribution or claims by the Trustee. In this regard, BSB argues that the credit disability insurance policy is for the protection of the holder of the note, namely BSB, and not the Debtors. BSB contends that when the loan was extended to the Debtors, the insurance policy was required as additional security. As such, BSB maintains that the claim proceeds belong to BSB alone as the designated third-party beneficiary assigned the original note. BSB likens the insurance policy in the instant case to corporate directors' and officers' liability insurance policies and argues that the proceeds derived under such policies do not constitute property of the estate.

Furthermore, BSB argues that since the monthly credit disability insurance benefit is payable directly to BSB, the Debtors have never acquired an interest in those proceeds and cannot do so simply by virtue of their status as debtors in bankruptcy. Citing this Court's recent decision in *In re Denario*, BSB maintains that a debtor in bankruptcy cannot obtain greater rights to the proceeds in question merely by filing a bankruptcy petition. *See generally, In re Denario*, Ch. 13 Case No. 00–60070, slip op. (Bankr.N.D.N.Y., January 4, 2001, Ger-

---

1. It is unclear from the record why the Debtors scheduled BSB's claim as $5,500 on Schedule D with the secured claims, yet scheduled the same claim as $7,000 on Schedule F with the unsecured non-priority claims.

ling, C.J.).  In addition, BSB contends that the Debtors' use of the monthly credit disability insurance benefit to fund the proposed plan conveys an interest in those proceeds to the Trustee and to creditors, that they would not otherwise be entitled to under New York Insurance Law. In this regard, BSB contends that under New York Insurance Law the benefit proceeds from a disability insurance policy are exempt from execution by creditors and the practical effect of allowing those proceeds to fund a Chapter 13 Plan is to sanction such an execution in contravention of state law.

The Debtors contend, and the Trustee agrees, that credit disability insurance was not, as BSB maintains, required as additional security for the Debtors to obtain the loan.  In support of this argument, the Debtors refer to language in the note which states, *inter alia,* that "I [Debtors] UNDERSTAND THAT GROUP CREDIT LIFE INSURANCE AND/OR DISABILITY INSURANCE IS NOT REQUIRED BY THE LENDER."  BSB Memo, Exhibit A, at 4. The Debtors and the Trustee

assert that since the credit disability insurance policy was not required by BSB's predecessor in interest, BSB had no insurable interest in the Debtors at the time the policy was issued and, thus, any proceeds derived therefrom must be payable to the insured, namely the Debtors.[2]  Because BSB has no insurable interest, both the Debtors and the Trustee contend that BSB's status with regard to the credit disability insurance policy is that of mere beneficiary.  The Debtors and the Trustee argue that in New York, an insured has the right to change the named beneficiary on a policy insuring the insured unless the insured makes an irrevocable designation of beneficiary on the insurance contract at the time the policy was issued.  The Debtors and the Trustee both maintain that because the original designation of BSB as beneficiary was not irrevocable, the Debtors can now name themselves as beneficiaries and "therefore by implication the mortgagee has no right to these insurance proceeds."  Debtors' Memo, at 6.

In addition, the Debtors and the Trustee both contend that since BSB's mortgage is

**2.** The Court has some serious misgivings about the Trustee's reliance on *Stevens v. Baxter (In re Baxter)* in support of his argument that the insurance proceeds in the instant case are estate property and as such should be tendered to the Trustee.  *See Stevens v. Baxter (In re Baxter),* 187 B.R. 48 (Bankr. S.D.Ga.1995); Trustee's Memo, at 5. In *Stevens,* the debtor's confirmed Chapter 13 plan allowed Ford Motor Credit Corp.'s claim in the full amount due on Ford's automobile loan at the statutory rate of 12%.  *See id.* at 49.  When the automobile was destroyed in a post-confirmation collision, the debtor's auto insurer paid Ford the principal balance due plus interest at the original contract rate of 13.5%. The debtor sought turnover of the excess funds resulting from the additional 1.5% interest Ford received on its claim.  *See id.* at 50.  The court opined that under Georgia law, Ford, as loss payee, was entitled to insurance proceeds up to the amount of the outstanding indebtedness and that the insurance

proceeds received by Ford were not property of the estate.  *See id.* at 51.  However, the court found that because Ford was reimbursed at the original contract rate of 13.5%, the Chapter 13 trustee had overpaid Ford on its claim and it was the overpayment that was property of the estate subject to plan distribution.  *See id.*  The court in *Stevens* was careful to note that the facts of that case are clearly distinguishable from cases, such as the instant case, where the trustee seeks turnover of the actual insurance proceeds rather than the surplus of an overpaid claim.  *See id.*  To this end the court stated in *dicta,* that "I do not dispute the findings of [*First Fidelity Bank v.*] *McAteer* wherein the proceeds of a credit life insurance policy were determined property of the creditor beneficiary of the policy and not property of the estate of a debtor who owned the policy at the time of the bankruptcy filing."  *Id., citing First Fidelity Bank v. McAteer,* 985 F.2d 114 (3d Cir.1993).

fully unsecured, it is subject to classification as an unsecured, non-priority claim. The Debtors and the Trustee assert that since BSB's claim is fully unsecured, it has no right to the insurance proceeds since under the insurance policy, once BSB lost its secured status, the Debtor became the beneficiary by operation of the policy. To this end, the Debtors and the Trustee rely on the language in the policy which states, "If any insurance remains, the balance will be paid to you if you are living; otherwise to a beneficiary named by you or to your estate." Debtors' Memo, at 8. Finally, the Debtors contend that the subject insurance proceeds constitute disposable income of the Debtors as that term is defined under Code § 1325(b)(2) and as such should be made available to creditors for distribution through the proposed plan.

In response, BSB contends that pursuant to New York State Insurance Law § 3205, an insurable interest includes a "lawful and substantial economic interest in the continued life, health or bodily safety of the person insured..." BSB Reply Memo, at 1; see also, N.Y. INS. LAW § 3205(a)(1)(B). BSB contends that when the Debtors delivered the note to BSB's predecessor in interest, it acquired an economic interest in the Debtors' life and health. Moreover, BSB asserts that an insurable interest is not determined at the time the bankruptcy petition is filed or at confirmation of a proposed plan, rather, it is determined at the time the insurance contract is made. Thus, BSB contends, even if its loan is subject to treatment as fully unsecured, it's insurable interest is not prejudiced. Finally, BSB contends that the Debtors' reliance on the language in the note to support its position that the insurance policy was not required by BSB is misplaced. In this regard, BSB contends that credit disability and life insurance policies were required, however, what was not required was group credit disability and life insurance. BSB contends that the language used in the note is not a notification that insurance in general is not required, rather it is a required notification to borrowers that they may opt to provide the creditor with group or individual insurance protection.

## DISCUSSION

At the outset, the Court notes that although in its original October 13, 2000 Objection BSB argued that its claim was at least partially secured and thus not subject to modification under Code § 1322(b)(2), BSB has effectively abandoned this argument in light of its stipulation as to the value of the Debtors' real property. See Code § 1322(b)(2)(A Chapter 13 "plan may...modify the rights of holders of secured [or unsecured] claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence..."). At the November 21, 2000 Confirmation Hearing, counsel for BSB argued that BSB's contention that its claim was at least partially secured was predicated on its objection to the scheduled value of the subject premises. Since that Confirmation Hearing, however, BSB has stipulated to the Debtors' scheduled valuation of the property at $56,000. The practical result of BSB's stipulation is a concession that the Debtors lack any equity in the subject premises above the amount of the senior mortgage, leaving BSB fully unsecured. This Court has held in the past that where the claim of a qualified subordinate mortgagee is wholly unsecured by virtue of a debtor's lack of equity above the amount of a prior mortgage, that the subordinate mortgagee's claim is subject to modification under Code § 1322(b)(2). See In re Cerminaro, 220 B.R. 518 (Bankr.N.D.N.Y.1998, Gerling, C.J.); Scheuer v. Marine Midland Bank, N.A. (In re Scheuer), 213 B.R. 415

(Bankr.N.D.N.Y.1997, Gerling, C.J.); *Pond v. Farm Specialist Realty (In re Pond)*, 250 B.R. 8 (N.D.N.Y.2000, Kahn, J.)(relying on *Cerminaro* and *Scheuer*). BSB's claim is no exception to this rule. As BSB has effectively withdrawn its objection to the scheduled valuation of the subject real property, its claim will be treated as fully unsecured and subject to modification under Code § 1322(b)(2).

■ The threshold issue regarding the credit disability insurance proceeds is whether those proceeds constitute property of the Debtors' estate under Code § 541. *See* Code § 541 (Property of a debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."); *see also,* Trustee's Memo, at 3 ("[A] critical issue in the case before us is who is the owner of the proceeds."). It is well settled that an insurance policy and any rights thereunder owned by a debtor upon filing a petition for relief in bankruptcy are property of the bankrupt estate. *See MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89 (2d Cir.1988), *cert. denied,* 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988). Ownership of an insurance policy, however, does not necessarily entail ownership of the proceeds payable thereunder. *See In re Goodenow,* 157 B.R. 724, 725 (Bankr.D.Me.1993). Thus, "[t]he overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim." *Houston v. Edgeworth (In the Matter of Edgeworth)*, 993 F.2d 51, 55 (5th Cir.1993); *see also, In re Denario,* Ch. 13 Case No. 00–60070, slip op. at 6 (Bankr. N.D.N.Y., January 4, 2001, Gerling, C.J.)(holding that "the owner of an insurance policy cannot obtain greater rights to the proceeds of that policy...by merely filing a bankruptcy petition") (citations and internal quotations omitted); *First Fidelity Bank v. McAteer,* 985 F.2d 114, 117 (3d Cir.1993) ("[I]f the owner of a life insurance policy did not have an interest in its proceeds, the filing of the petition in bankruptcy cannot create one.").

■ Pursuant to New York State Insurance Law § 3201(b)(4), credit disability insurance is defined as "insurance on a debtor, including an intended borrower...in connection with a specified loan or other credit transaction to provide payment...***indemnity to the creditor*** for the installment payments on the indebtedness becoming due while the debtor is disabled as defined in the policy..." N.Y. INS. LAW § 3201(b)(4)(A)(emphasis added); *see also,* N.Y. COMP. CODES R. & REGS. tit. 11, § 185.1 (2001) ("Credit accident and health insurance means insurance on a debtor in connection with a specific loan or other credit transaction in this State to provide indemnity to the creditor for installment payments on the indebtedness becoming due while the debtor is disabled."); 68A N.Y. JUR. *Insurance* § 541 (" 'Credit insurance' means indemnifying...persons extending credit against loss...resulting from the nonpayment of debts owed to them..."). The purpose of credit disability insurance is to protect the interests of the lender in the event of a debtor's unforeseen disability and to mitigate a debtor's hardship in light of such disability. *See* N.Y. COMP. CODES R. & REGS. tit. 11, § 185.0 (2000)("In the financing of the flow of goods and services, credit insurance provides important stability by protecting the interests of lenders and sellers in the payment of outstanding debts and avoiding hardship to debtors and their families in the event of death or disability."). "Credit insurance is a third-party beneficiary arrangement...under which [a lender]...is a creditor beneficia-

ry...[and t]he [insurance] contract is a contract to indemnify..." *Amsterdam Savings Bank v. Reinhart*, 142 A.D.2d 863, 864, 531 N.Y.S.2d 143, 144 (N.Y.App. Div.3d Dep't.1988). To this end, New York State Administrative Code requires that all policies of credit disability insurance "shall set forth...that the benefits *shall be paid to the creditor* to reduce or extinguish any unpaid net indebtedness to the creditor, and, where the amount of insurance exceeds any such unpaid net indebtedness, that any such excess shall be payable to the debtor or to a designated beneficiary..." N.Y. COMP. CODES R. & REGS. tit. 11, § 185.5(c)(8)(2000)(emphasis added). Thus, a policy of credit disability insurance vests in the borrower no rights to the proceeds derived from a claim under the policy, rather, it is only after the indebtedness has been satisfied that a borrower gains any rights to surplus proceeds. In the context of bankruptcy, a credit disability insurance policy vests in a debtor only "rights which could potentially *affect* the proceeds; however; the [d]ebtor does not have the type of legal or equitable ownership interest necessary under § 541(a) to make the proceeds estate property." *In re Goodenow*, 157 B.R. at 725 (emphasis in original); *see also, Johnson v. USAir Federal Credit Union (In re Johnson)*, 162 B.R. 464, 466 (Bankr.M.D.N.C. 1993)("This court will not elevate the rights of the...debtor to create an interest in a[ ] [credit disability] insurance policy that would not exist but for the bankruptcy filing.")

In the instant case, the Debtors had never acquired a vested right in the claim proceeds that were payable to BSB and its predecessors in interest since both by statutory regulation as well as the language of the policy itself, the proceeds could never be paid to the Debtors until the outstanding note is satisfied. The unambiguous language of the policy provides no mecha-

nism by which the Debtors are permitted to name themselves as beneficiaries under the policy as the Debtors suggest. In this regard, the policy states that "The Creditor will use these payments to reduce or pay off your [Debtors'] loan...[and]...[i]f any insurance remains, the balance will be paid to you if you are living, otherwise to a beneficiary named by your estate." BSB Memo. Exhibit A, at 2. The Debtors cite this language as evidencing a revocable designation of beneficiary. This narrow reading, however, contravenes not only the prevailing regulatory provisions noted *supra*, but also ignores the insurance policy provisions themselves. The Debtors' eligibility as beneficiary under the policy clearly turns on the occurrence of a condition precedent, namely the satisfaction of the underlying note, a condition which quite obviously has not occurred. *See Cupp v. Associates Consumer Discount Company (In re Cupp)*, 229 B.R. 662, 664 (Bankr. E.D.Pa.1999)("Here, the estate has no interest in [*sic* ] proceeds as they have been absolutely assigned to the lender. As to the prepaid premium, however, the policy provides for a refund to Mr. Cupp of any unearned premium if certain events occur, such as prepayment of the balance of the note before its maturity. Thus, the estate has an interest in any refund of unearned premiums [only] if the loan is paid off early."). It is clear that under both the applicable New York State regulatory scheme and the terms of the credit disability insurance policy itself, the Debtors have no beneficial interest in the proceeds now being paid to BSB as creditor beneficiary under the policy. As such, those proceeds do not constitute property of the Debtors' estate subject to distribution through the proposed plan.

■ The Court finds unconvincing the Debtors unsupported assertion that BSB has no insurable interest in the Debtors.

*See* Debtors' Memo, at 5. An insurable interest in anyone other than a blood or marital relative includes "a lawful and substantial economic interest in the continued life, health or bodily safety of the person insured." N.Y. INS. LAW § 3205(a)(1)(B). As recognized in New York State Insurance Law § 3201(b)(4), discussed *supra,* a lender has a statutorily recognized insurable interest in its borrowers. *See* N.Y. INS. LAW § 3201(b)(4)(A). The New York State Legislature having long recognized a creditors' insurable interest in a borrower's continued health, this Court is not inclined to abrogate that authority on the Debtors' mislaid reliance on New York Insurance Law.

The Court finds equally unconvincing, the Debtors' reliance on this Court's decision in *In re Scheuer* for the proposition that, even if an insurable interests existed at the time the policy was delivered, the insurable interest was lost once BSB lost its status as a secured creditor. *See generally, In re Scheuer,* 213 B.R. at 415. In *In re Scheuer* this Court held that the relevant point in time in determining the value of a debtor's primary residence for the purpose of calculating equity, or lack thereof, is the value at the time of the filing of the petition in bankruptcy. *See id.* at 419. The Debtors contend that since BSB had no security interest by virtue of the value of the Debtors' primary residence at the time of filing, that any insurable interest was lost when BSB's security interest was lost. The Debtors' application of *In re Scheuer* to the instant case is clearly flawed.

New York Insurance Law § 3205(b)(2) provides in pertinent part that "[n]o person shall procure...any contract of insurance upon the person of another unless the benefits under such contract are payable to the person insured or his personal representatives, *or to a person having, at the time when such contract is made, an insurable interest in the person insured.*" N.Y. INS. LAW § 3205(b)(2)(emphasis added). This "statute clearly states that when a policy is valid at its inception, it remains so even after the purchaser's insurable interest in the life of the insured has ended." *Herman v. Provident Mutual Life Ins. Co. of Philadelphia,* 886 F.2d 529, 534 (2d Cir.1989). "Thus, in New York, it has been established since before the turn of the century that termination of an insurable interest has no effect on the beneficiary's right to recover under a policy that was initially valid." *Id.* The Court agrees with the Debtors that the relevant point in time for determining the value of the Debtors' residence is date of filing of the bankruptcy petition. This, however, in no way prejudices BSB's right to the claim proceeds under the credit disability insurance policy issued at the time the note was delivered since under well-settled New York law, the relevant point in time for determining whether an insurable interests exists is the date of the inception of the insurance policy which interest in any event, survives the cessation of the insurable interest.

Based on the foregoing, it is hereby,

ORDERED that the Debtors' request for confirmation of the proposed individual debt adjustment plan dated August 10, 2000, to the extent that it is to be funded with the proceeds of the credit disability insurance policy maintained by Madison National Life Insurance is denied, without prejudice, and it is further

ORDERED that unless the Debtors file an amended Chapter 13 plan and notice the same for confirmation within forty-five (45) days of the date of entry of this Order, the Debtors' Chapter 13 case shall be dismissed.